## EDWARD CAMPBELL *v.* H. HACKFELD & CO.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED SEPTEMBER 23, 1910.                    DECIDED OCTOBER 4, 1910.

### HARTWELL, C.J., PERRY AND DE BOLT, JJ.

TRIAL—*verdict—evidence in support of—plaintiff's habits.*

A verdict is not set aside because evidence was rejected or struck out if it afterwards went before the jury.

It was not error to refuse to allow the plaintiff to ask his witness whether he was a drinking man or not at the time of the accident.

TRIAL—*instructions—facts for the jury, law for the court—court not required to summarize facts to which instructions are to be applied.*

Instructions were properly refused involving a finding by the jury of defendant's liability or a finding by the court that the plaintiff was not negligent.

It is not the duty of the court to refer specifically to facts in the case to which its instructions are intended to apply.

TRIAL—*waiver—voluntary submission of personal examination.*

The plaintiff waived his exception to an order that he be examined by a physician by voluntarily submitting his person for examination by the physician in presence of the jury.

Campbell v. Hackfeld & Co., 20 Haw. 245.

OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiff brought an action on the case to recover damages for injuries to his person received in the defendant's employ, resulting from the breaking of a defective rope used in hoisting from the hold of the ship on which he was employed two trucks which had been used in discharging cargo. The details of the case, as shown at the former trial in which a directed verdict was set aside, appear in 20 Haw. 35. A verdict for the defendant was rendered at the second trial and the plaintiff brings exceptions to rulings upon evidence, to granting the defendant's motion that the plaintiff's person be examined by a physician, to certain instructions refused and to others which were given, to the verdict as contrary to law, the evidence and the weight of evidence, and to the refusal of his motion for a new trial based on the same grounds.

The verdict was not unsupported by evidence. On the contrary, there was evidence, and more than a scintilla, in support of it which in conformity with the established practice of this court requires the verdict to stand unless there was prejudicial error in the rulings or instructions or in requiring the plaintiff to submit to a personal examination.

Exceptions were taken to the striking out of certain answers made by witnesses for the plaintiff on the grounds that they were inferences, hearsay, irresponsive to the questions, not appropriate for re-direct examination or immaterial, and to the rejection of certain offers of evidence by the plaintiff on the ground that the offer was not sufficiently specific, failing to state specific facts sought to be shown; but as the evidence struck out or rejected was afterwards presented and went to the jury it is unnecessary to discuss whether the rulings were right or wrong as the plaintiff was not harmed by them. *Territory* v. *Nobriga*, 16 Haw. 29. This applies to exceptions 1, 2, 3, 4, 5, 8, 9, 10, 11 and 16.

In exception 6 a witness for the plaintiff when asked "What was the manner in which Tom Pedro showed the rope to the captain?" answered "It seemed to me he was showing the rope to the captain and at the same time it seemed to me in the way he was speaking that the rope was rotten, unfit to use." The answer was struck out as not responsive and as giving the witness' opinion. The witness having testified that he did not remember that he understood "any word spoken between the captain and Tom Pedro," the ruling was correct.

As no reference to exceptions 7, 13, 14 and 15 appears in the brief of either party they are not to be taken as relied upon.

Exception 12 was taken to the refusal to allow the plaintiff to ask one of his witnesses whether at the time of the accident the plaintiff "was a drinking man or not." It is not obvious what bearing the fact that the plaintiff was not a drinking man, if shown, would have had upon the case since at the most it would only have affected the amount of damage to which he would have been entitled if he had received a verdict, and for the further reason that in the absence of evidence to the contrary the presumption was that his habits were good.

The plaintiff requested the following instructions, which were refused:

"If you find that at the time of the falling of the trucks, plaintiff was working in the hold under or near the hatch and that plaintiff had no duty or liability as to selection, oversight, or charge of the ropes used in hauling out the trucks, and that the plaintiff did not hear the call to stand from under, if you find there was such call, then the plaintiff was not guilty of contributory negligence."

"If you find that at the time of the falling of the trucks into the hold, plaintiff was working in the starboard wing of the hold not directly beneath the open hatch, but on the starboard side of the space in the hold directly beneath the hatch, and out from under heavy bodies falling through the hatch, he was not guilty of contributory negligence."

The instructions were properly refused as they involve a

finding by the jury of the defendant's liability or duty which was a question of law for the court, and a finding by the court that there was no negligence in being where the plaintiff stood at the time of the accident.

The plaintiff excepted to the following instructions, which were given:

"If you find from the evidence that although the defendant may have been guilty of negligence through its servants contributing to produce the injury complained of, still if you find that the plaintiff was also guilty of negligence proximately contributing thereto, the defendant is not liable unless his negligent act occurred after he became aware of the danger to which plaintiff by his own neglect may have exposed himself."

"If you believe from the evidence that the danger to which the plaintiff was exposed was a risk assumed by him, or if such danger was a risk ordinarily incident to his work, or was a danger of which he knew, or by the exercise of ordinary care in the discharge of his duties might have known the plaintiff is entitled to nothing, and your verdict must be for the defendant."

"If you find under the above instructions that plaintiff and defendant were both guilty of negligence which contributed to bring about the accident to plaintiff, then plaintiff cannot recover herein, and you will find for the defendant."

"It is the duty of one engaged in dangerous employment to keep a constant outlook for the dangers that beset him, but if he receives an injury because of a danger to which he is exposed or which he had equal advantages and opportunities with the employer to know and fully understand, he cannot recover for an injury as a result of such danger."

"If you find that the defendant furnished reasonably safe tools, appliances and machinery for the work of discharging the cargo of coal from the bark "Aeolus," and that the defendant was injured on account of the negligence of one or more of his co-workers, then your verdict must be for the defendant."

The plaintiff's objection to the instructions is that they are a "bald statement of the law—without a summary of the facts taken from the case;" were "inapplicable to the weight of evi-

dence" and might have misled the jury to misapply them and omit to apply them where they were properly applicable, and that they ignore the doctrine of "last clear chance." We do not regard it as the duty of a court to refer specifically to facts in the case to which its instructions are intended to apply if not requested to do so. The instructions state the law correctly. The evidence did not require further recognition of the "last clear chance" than appears in the instructions shown in the bill of exceptions. The entire charge is not brought here and may have further referred to this matter.

Exception 12a was taken to the granting of the defendant's motion for an order requiring the plaintiff to be examined as to his physical condition, alleged in the complaint, "by such physician and surgeon as the court may think proper, at such time and place as the court may appoint." The motion was based upon the affidavit of the defendant's attorney of his information and belief that the plaintiff "was suffering with tuberculosis and that unless he would submit to an examination of his physical condition the affiant would be unable to procure expert testimony as to the extent of the tuberculous condition, its effect upon the plaintiff's earning capacity or his life expectancy because of it," and that the examination was necessary in order that the defendant might intelligently defend the action. The motion was presented and argued before the trial and denied without prejudice to its renewal at a subsequent time during the trial. The plaintiff having rested his case, after testifying in his own behalf and without offering any expert testimony as to his physical condition, the order was made, the plaintiff objecting that it "was a violation of his personal liberty," that "James R. Judd, a physician and surgeon duly authorized to practice and practicing in the Territory of Hawaii, and having no interest in the suit herein be and he is hereby appointed to examine at a time suitable and convenient to the said Judd and to said plaintiff herein, the said plaintiff

as to his physical condition, the result of said examination, to be established by the oral evidence of said James R. Judd so far as the same is competent, relevant and material, to be used by either party hereto." The doctor was called by the defendant, and after stating in part what he had observed in the examination, said, "If I had the man stripped I could show very much better than I could talk about it just what his condition is." Thereupon the plaintiff's attorney asked the defendant's attorney, "Have you any objection?" the reply being, "I have no objection, let's have it." The plaintiff was then stripped to the waist in the court room and examined by the doctor who showed that the plaintiff had not been injured in the manner or to the extent he had testified for himself. The defendant claims that this was a waiver of the plaintiff's exception.

Undoubtedly the defendant did not intend to waive his exception to the order by offering himself for examination but it may be inferred that he expected to show to the jury that the doctor was not correct in what he would testify concerning him and perhaps could convince the doctor of this, as he afterwards tried to do in cross-examination. If he meant to rely on his exception could he consistently seek in this manner to gain any benefit for himself? Instead of objecting to the doctor testifying or afterwards moving that his testimony be struck out, thereby giving the court an opportunity to reconsider the order, the plaintiff proposed that his person be examined in the presence of the jury. This was inconsistent with relying upon his exception. It was held in *Union Pacific Railway Co.* v. *Botsford,* 141 U. S. 250, 251, 253, a case like that before us, that the United States Circuit Court had properly denied a motion by the defendant three days before the trial that the plaintiff be required to submit to a surgical examination on the ground that "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all re-

straint or interference of others, unless by clear and unquestionable authority of law," and that "no order to inspect the body of a party in a personal action appears to have been made, or even moved for, in any of the English courts of common law, at any period of their history." In *Camden and Suburban Ry. Co.* v. *Stetson,* 177 U. S. 172, 174, an action in the U. S. district court for New Jersey to recover damages for injury to the person of the plaintiff caused by the defendant's negligence, a similar motion was denied on the ground that the court had no power to order the plaintiff to subject himself to examination against his will although there was a New Jersey statute authorizing it. The court held that the statute applied in trials at common law in United States courts as Sec. 721 Revised Statutes provided that "the laws of the several States, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in courts of the United States, in cases in which they apply," saying, "There is no claim made that the statute violates the Federal Constitution, and we are of opinion that such a claim would have no foundation if made."

Assuming, but only for the purpose of this case, that under like conditions the rule in the *Botsford* case would be obligatory on this court, we are of the opinion that it does not apply to the circumstances here shown. If the plaintiff was wronged by the order it was because of the unjustifiable invasion of his person which it authorized, but its sole object was to obtain evidence of his physical condition. As the same evidence, to be obtained in the same way, was proposed by the plaintiff, he was not in fact harmed thereby. That an illegal method of obtaining evidence does not make it inadmissible is settled in *Territory* v. *Soga,* 20 Haw. 71, 82. If wrong had been done to the plaintiff after he had voluntarily subjected himself to examination, it was a wrong in theory only. His offer to be examined was

Campbell v. Hackfeld & Co., 20 Haw. 245.

intended to make a favorable impression on the jury and if he had succeeded in obtaining a verdict thereby he would have had no cause to complain of the order.    It was not the order which was objectionable to the plaintiff when he took the exception, but the examination it required.    By requesting examination he showed as plainly as words could do that he no longer objected to it.    If the doctor had not examined the plaintiff, or had not been called to testify, the order if illegal would have been harmless.    Upon the whole the plaintiff's conduct in this matter appears to have been a practical waiver of any right he may have had to be exempt during the trial from invasion of his person.

Exceptions overruled.

*Magoon & Weaver* for plaintiff.

*A. A. Wilder* and *C. C. Bitting* (*Thompson, Clemons & Wilder* on the brief) for defendant.