## M. A. MARTIN *v.* A. A. WILSON.

## No. 858.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED NOVEMBER 29, 1915.  DECIDED DECEMBER 6, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

APPEAL AND ERROR—*exceptions—order granting new trial.*
> For the purpose of exceptions an order granting a new trial is regarded as a final order.

SAME—*statement of case—briefs.*
> A summary of the evidence contained in the appellant's brief which is not controverted by the appellee may be adopted by the court as being a fair statement of the case.

NEW TRIAL—*verdict—sufficiency of evidence.*
> A circuit judge should not grant a new trial on the ground

merely that a verdict for the defendant was against the weight of the evidence where it cannot be said that there was no substantial evidence to support it.

MASTER AND SERVANT—*negligence—omission of precautions to prevent accident.*

The true question for the jury is not whether the master could have done something to prevent an injury to his servant, but whether he omitted any precaution which a prudent and careful man would or ought to have taken.

NEGLIGENCE—*primarily question for jury.*

The question of negligence is primarily one for the jury under proper instructions, and becomes a matter of law for the court only where there is no conflict in the evidence and but one inference can reasonably be drawn from the facts.

TRIAL—*verdict—instructions.*

A verdict cannot be said to be contrary to law because the jury supposedly overlooked certain instructions in a case where varying instructions were given to meet the facts as the jury might find them. It will be assumed that the jury found the facts to have been as contended for by the successful party.

OPINION OF THE COURT BY ROBERTSON, C.J.

This case comes to this court on a bill of exceptions of the defendant allowed by the circuit judge as an interlocutory bill. Thirty-seven exceptions were incorporated in the bill, thirty-four of which were to instructions given to the jury, one to the denial of a motion for a nonsuit, one to the refusal to direct a verdict for the defendant, and one to the granting of plaintiff's motion for a new trial. The jury having returned a verdict for the defendant the last exception is the only one which demands the attention of this court, and as, under the practice in this jurisdiction an order granting a new trial is, for the purpose of an exception, a final order, the allowance by the circuit judge was not required.

The plaintiff, a laborer in the employ of the defendant, claimed damages against the defendant, a contractor, for personal injuries sustained by him in the course of his em-

ployment in the construction of a certain stone wall and by reason of the alleged negligence of the defendant in failing to provide him a safe place in which to work.

The time, place, circumstances of the occurrence and nature of the injuries sustained were alleged in the second paragraph of the plaintiff's complaint as follows.:

"That on the 27th day of October, 1913, at Kapiki Gulch, District of Makawao, County of Maui, Territory of Hawaii, the defendant aforesaid was building and constructing a stone wall for the purpose of a retaining wall along the bank of Kapiki Gulch and on said date and prior thereto, plaintiff was employed and engaged in working for the defendant as a day laborer, the plaintiff's duties, being under his said employment, to deliver and assist in delivering to the stone masons and builders of said wall material for the purpose of constructing the same; and at the time of injuries to plaintiff hereinafter complained of, he was actually engaged in such services under his contract with the defendant, and as a part of his duties as such servant to the defendant. Said retaining wall had, on the date hereinabove named, been constructed to a height of about 30 feet and plaintiff was then and there on the top of said retaining wall performing his duties as such laborer in rolling and moving large stones to be placed in the wall for the purpose of further construction thereof. Plaintiff was acting in the line of his duties under his said contract and by order of the defendant and was at that time and place in the exercise of ordinary care and caution. When, without plaintiff's fault, said wall on which he was working collapsed and fell, thereby throwing plaintiff violently to the ground, a distance of about 30 feet and in falling, he was caught under some of the material of the wall, namely large pieces of stone and was thereby crushed, bruised, lacerated and wounded in such manner as that he was then and is now, as a result of said fall, permanently injured. Plaintiff's injuries so received consisted of cuts, bruises and laceration in and on various parts of his body, but his most severe and permanent injuries were to his left leg, both above and below his knee; plaintiff's leg being caught under the falling stone and debris, was torn, crushed and lacerated to such an ex-

tent that he was thereby permanently disabled. From said injuries, he has suffered great pain and mental anguish and from the same he still suffers in like manner. The flesh and muscles were torn from the bone of his leg and were otherwise injured to such an extent that plaintiff was compelled to be taken to a hospital for treatment, where he has remained constantly from that time up to this date and where he will be compelled to remain for an indefinite period for treatment of his injuries that he received as hereinabove indicated. Plaintiff has been compelled to spend large sums of money on hospital fees, doctor's bills, nursing and medical bills; has been deprived and is permanently deprived of his means of earning a living for himself and family by reason of the injuries hereinabove described. Plaintiff will not only be permanently injured; but his physical condition from the injuries received in said accident are such as that he will probably not be able to leave the hospital and will certainly never be able to engage in his former pursuits and labor, whereby he did earn and otherwise be able to earn a living for himself and family. Plaintiff was thereby and is totally disabled to do any kind of work or labor."

The facts so set forth were substantially proved by uncontradicted evidence.

The alleged negligence of the defendant was set forth in the third paragraph of the plaintiff's complaint as follows:

"At the time of the injuries hereinabove complained of, plaintiff was in the exercise of ordinary care and caution. He was without fault in that he was performing his duties carefully and faithfully under the contract by and between himself and the defendant. The collapse and falling of said wall was due to the negligence and lack of care and skill on the part of the defendant in this that it was the duty of the defendant to provide a safe place for plaintiff to work and the defendant knew or could have known by the use of ordinary care, skill and observation, that the place provided plaintiff to work on said wall was unsafe and dangerous and this was not known to plaintiff nor could have been known to him by the use of ordinary care and observation. It was the duty of the defendant to have secured said wall from falling and collapsing by bracing

the same with earth and other material as the same was being constructed, but this duty of the defendant was neglected by him, and by reason of the failure of defendant to perform this duty, the wall was made insecure and unsafe; and on account of this failure of the defendant to perform his duty to the laborers on said wall and particularly to plaintiff, the wall collapsed and fell and plaintiff was injured as hereinabove set out and described.''

The evidence in the case is thus summarized in the brief for the defendant, and as no defect therein has been pointed out by counsel for the plaintiff, it is adopted as a fair statement of the circumstances under which the injury occurred. The testimony for the plaintiff tended to show:

"That on October 27, 1913, the plaintiff was working at Kakipi Gulch, Maui; that at that time plaintiff was injured by the giving way of a wall upon which he was at work; at that time the defendant, A. A. Wilson, had a contract to build a road for the Loan Fund Commissioners, across Kakipi Gulch, Maui; the road was being constructed by building two dry rubble retaining walls for the purpose of holding a fill which would constitute the roadway. The plaintiff had been working upon the mauka of the two walls from some time in July until he was injured in October. He was a member of a gang of three or four who were building the wall. His job was to lay and place the stones in the wall, which job included helping to roll the stones or to bring stones to the wall. Martin, the plaintiff, was really making the wall. At the time plaintiff was injured the height of the mauka wall is placed by guesses of plaintiff's witnesses at 18 or 19 feet to 25 or 30 feet at the place where the wall gave way. The break occurred 40-45 feet from the bridge end of the wall. The cross-section of the wall at such a point as shown by the specifications would fix the height of the wall at 12-13 feet at the time of the accident. A narrow gauge car track was laid along the top of the incomplete wall at this time which would fix the width of the top of the wall at this point at 5 to 7 feet. The plaintiff started work at the gulch before Christmas, 1912. He had worked on road building before. He alleges that he was laid off for about two months. This was probably during

May and June. When he returned to the job he went right to work building wall. He recognized the risk of building this wall. In building the wall the laborers had hammers with which to chip off uneven corners, fit them into place and test their hardness. The work was of such a nature that a man of ordinary sense or judgment could perform it. When work was first begun on wall, rocks were brought from top of gulch. The wall in question was built with a batter or slope on the outside and vertical on the inside. When plaintiff went to work on the wall, he alleges that it had already been built up to about one-half of its height at the time of the accident. The plaintiff also alleges that he helped start that part of the wall 40 to 45 feet from the bridge end. His other witnesses put the place of the accident at 40 to 45 feet from the bridge end. The wall was not built straight up in reference to its cross-section but was begun in slanting benches. The part of the wall on which plaintiff was working on October 27, 1913, slid or sunk inwards. A scoop shaped portion of the wall slid inwards. A higher portion of the wall than that which fell was left standing after the accident. (There is a conflict in the plaintiff's evidence as to how much of the inside of the wall was left standing after the accident. Plaintiff, himself, alleges he couldn't see. One witness alleges it fell to within two feet of the ground on the inside and eight feet on the outside of the wall. Another alleges that most of the outside of the wall stood up and enough of the rest to make the wall about eight feet wide at the top of the break and about half of the wall was still standing.) Plaintiff rolled down with the sinking wall and was injured by a large stone which fell on his leg. A fellow laborer whose ankle and back had been hurt in the accident lifted the stone from the plaintiff's leg. The plaintiff was then cared for and as soon as possible taken to the nearest hospital for treatment. At the time of the accident the makai wall which was to help retain the fill for the road was not very high, less than one-half of the height of the mauka wall which fell."

The testimony adduced by defendant tended to show:

"That the men in charge of the construction work referred to in the evidence of plaintiff, were all competent men, having had considerable experience in the matter of

road construction and the building of dry rubble retaining walls. The experience of Mr. Howell, who had general oversight over the job as partner of defendant, A. A. Wilson, is shown on pages 189, 190, 207 and 208 of the transcript of evidence. Mr. Brune was in charge as supervising engineer for the loan fund commission under whom the contract for building the road was let. Mr. Hutchins was foreman of the job and a man of experience in this line of work. Mr. Lada, general efficiency man, resident at the construction camp, was a man of considerable training and ability in engineering work. The building of the wall in question was inspected frequently. Mr. Howell and Mr. Brune inspected at least once or twice a week prior to the accident. Mr. Hutchins, the foreman in charge of the work, inspected the work of the laborers upon the wall several times each day. Mr. Lada was on the wall about twice every day for the purpose of measuring the same and keeping unit costs in the construction of the same. Mr. Wilson, the defendant, examined the wall in person and carefully at least once a month. The wall was frequently relaid when not built to the satisfaction of those inspecting it. The construction being undertaken at the Kakipi Gulch extended over a distance of from one-half to one mile and was under the personal charge of Mr. Hutchins, the foreman. Mr. Hutchins had three foremen under him on the whole job. Frequent instructions were given as to the method and manner of building the dry rubble retaining wall in question; to the foreman, Mr. Hutchins; to the foreman in the presence of plaintiff; to the men engaged in building the wall including the plaintiff. (The plaintiff denied that any instructions were ever given to him.) The plaintiff himself worked on the wall during part of June, all of July, August, September and October, 1913. Plaintiff started his experiences at the gulch as a wall builder in February, 1913. Plaintiff represented himself to Mr. Hutchins as a stone wall builder. (This was denied by the plaintiff.) Plaintiff showed by his workmanship on the wall that he knew how to lay stone in constructing a stone wall. Immediately after the accident and while waiting for the ambulance, the plaintiff laid the blame for the accident on the poor work of his fellow workmen. (This was denied

by the plaintiff.) The height of the mauka wall at the place where the break occurred and before the accident was placed at fourteen to sixteen feet. After the accident one-half of the original height of the place of the break still remained standing being about seven to eight feet on the outside and about six feet on the inside of the break. The break occurred forty to fifty feet from the bridge end of the wall. The highest point of the wall which had been built prior to the accident did not fall. In the first part of July, 1913, no part of the wall had been built at or about the place where the accident later occurred. Plaintiff was a wall builder upon the mauka wall at the time. The wall was constructed from the bridge end backward, stone being brought to the builders by a portable track laid upon the ground and wall. The stones were laid in bond, that is with over-lapping joints. Stones were well scabbled. They were well bonded. Hard stones were used in the wall. The difference between hard and soft stones is easily differentiated by lifting them or by tapping them with a hammer, and by the ordinary common sense of the stone layer. The wall was about nine feet at the base at the place of the accident, sloped on the outside three inches to a foot in height and was vertical on the inside. Long stones were laid at frequent intervals transversely through the wall and well bonded, the maximum stone being under five and one-half feet. The phrase 'long stones stretching through the wall' is to a practical engineer a somewhat technical phrase, indicating the direction of placing long stones and a continuation through the wall by bonding and lapping such stones. (The evidence on this point was elicited by the counsel for the plaintiff himself. The court refused to allow the counsel for the defendant to go into this matter, cutting off questioning as to binding of stones.) Definite instructions were given from time to time by Mr. Howell to build the wall with ample dimensions. The slopes for building and constructing the wall were carefully laid out from time to time by means of plumb lines and bamboo poles by the foreman, Mr. Hutchins, and by Mr. Brune, the supervising engineer. The specifications for the wall in question called for a base of between 7½ feet to 8 feet, a vertical face on the inside, a slope on the outside of 3 inches inward for every rise of a

foot in height, when completed of 22 feet, making the wall two feet wide at the top when completed. Practically the wall was about nine feet wide at the base at the place of the accident. After the accident and after the debris had been cleared away the method of construction went on the same as before the accident, the walls being nearly complete before any appreciable fill was put in. (This is questioned by a witness for the plaintiff.) The wall in question was built as a retaining wall, which is a wall designed to hold a fill. Such a wall should be self-supporting. In the construction of such a wall, a fill between two retaining walls is not necessary for the purpose of holding up the wall. (A retaining wall is compared with other kinds of walls and defined by some of the witnesses. The contract and specifications are silent as to when the fill should be put in. Such a wall as the plaintiff was constructing would not be a *retaining* wall if it could not stand alone. (The formula introduced by the counsel for the plaintiff in cross-examination of defendant's witnesses by the counsel for the plaintiff sought to show that the dimensions of the wall in question were faulty are all formally designed for the purpose of meeting the pressure which results *after* a fill has been put in.) Between the walls in question there was a slight waste fill. A larger fill is not put in during the progress of wall in order to make more efficient inspection possible. The foundation of the wall in question was better than that contemplated by the contract. The foundation was approved by the loan fund engineer, Mr. Brune. A boulder foundation such as used in this construction is a good substantial foundation. The break in the wall which caused the accident occurred suddenly. The wall slid out in a scoop shape. Those familiar with this form of construction give several explanations for the accident. The wall might have fallen in by the crushing of a soft stone, or by the slipping of a wedge shaped stone improperly placed. The break could have started above the part which was left standing. The kind of wall under construction and the method of construction was pronounced by expert evidence as efficient, proper and safe engineering. It is unnecessary to brace a retaining wall of the description of the wall in question. One of the expert witnesses testified to having

built a wall one hundred feet high under specifications similar to those used in this case. Ordinary laborers were competent to construct such a wall."

The precise cause of the wall's falling was not shown. In overruling the defendant's motion for a nonsuit, made at the close of plaintiff's case, on the grounds that there was no evidence to sustain the allegations in the complaint as to negligence; that there was no evidence of negligence on the part of the defendant; and that the defendant assumed all risks incidental to the work; the court said: "it is a question that the jury should decide," and the case was finally submitted to the jury under elaborate instructions given at the request of respective counsel and by the court of its own motion. Many objections were made by the defendant to the instructions, but we are not now concerned with them, it being enough for present purposes to note that the charge given to the jury appears, on the whole, to have been very favorable to the plaintiff. Indeed, the plaintiff's motion for a new trial assigned no error of law on the part of the court either in the charge given to the jury or otherwise, the motion being based upon the grounds that in arriving at their verdict the jury had overlooked certain of the instructions, and that the verdict was "contrary to the law and the weight of the evidence." The plaintiff does not contend that the trial was not conducted fairly or properly in any respect. In an elaborate opinion the trial court granted the motion for a new trial upon the grounds that "under the principle of law that 'the thing speaks for itself,' it is clear that there was some vital error in the construction of the wall on which plaintiff was working;" that the defendant had failed to comply with the terms of his contract with the public authorities providing that "The contractor must have at all times a competent man in charge of the work, if not himself, then someone to act for him as if he was present;" that "The contractor is

expected personally to inspect the ground and satisfy himself as to the conditions" etc.; that the "Foundation of wall to be of firm material excavated in benches at least two feet wide;" that "The wall to be built of hard stones of good size and shape suitable for bonding, that is, approximately parallel top and bottom faces, to be laid in courses with broken joints and good bond, to have frequent binders, long stones extending through the wall   *   *   * foundation of wall to be on firm material excavated in benches at least two feet wide. No wall to be built until the foundation be approved by the engineer or his authorized representative;" also that as it appeared by the uncontradicted evidence that the space between the two walls was not filled up as the work progressed, and that the wall in question could not have fallen in as it did if such filling had been done, and this in face of the fact that binding stones as required by the contract were not put in, and the wall having been built upon a foundation "that may have and probably did slip," negligence on the part of the defendant was shown, and the jury, it would seem, "clearly failed to appreciate the situation and that their verdict was against all the evidence in the case;" that the plaintiff did not receive proper care and treatment at the hospital to which he had been taken; and, finally, that as there was no evidence tending to show negligence on the part of a co-employee, or contributory negligence, or assumption of risk on the part of the plaintiff, there was possible error in giving instructions on these points.

On behalf of the defendant the contention is advanced that the doctrine of *res ipsa loquitur* has no application in an action for negligence by a servant against his employer; that the "safe place" rule, so-called, does not apply in such an action where the injury occurred in the doing of construction work; and that as there was no evidence to sustain the allegation of negligence on the part of the defendant

the plaintiff could not recover, and a verdict for the defendant should have been directed. In the view we take of the case it will not be necessary to consider this contention. We will assume, against this position of counsel for the defendant, that the case was properly submitted to the jury; that the jury could have found from the evidence that there was negligence on the defendant's part; and that a verdict for the plaintiff could not have been disturbed because of the rule that a verdict for the plaintiff cannot be set aside merely as being against the weight of the evidence where there is more than a mere scintilla of evidence to support it. *Robinson* v. *H. R. T. & L. Co.,* 20 Haw. 426. But from the assumption that the fact that the wall fell was some evidence of "some vital error" in its construction, and that the "safe place" rule applied to the condition of the wall in so far as its construction had progressed at the time the plaintiff returned to the employment, it would not follow as a matter of law that the defendant was liable, for the evidence did not show, but the jury were left to infer from all the circumstances, if they were able, what the defect was, in what part of the wall it occurred, and when and by whom it was caused. And if it was caused by the defective work of the plaintiff himself, or solely by the negligence of his fellow servants, without the knowledge, actual or implied, of the defendant, he being without fault in the premises, the plaintiff was not entitled to recover damages from the defendant. It may be said that there was no evidence tending to show negligence on the part of the plaintiff's fellow workmen, or contributory negligence on the part of the plaintiff, but it can with as much force be said that it did not appear what caused the wall to fall, and that there was no direct evidence that there was a defect in the wall of which the defendant was aware or should have known. And if the falling of the wall be considered as *prima facie* evidence of

defective construction, there was, on the other hand, affirmative evidence from which the jury could have found that the wall was being constructed in a reasonably safe manner, by competent workmen, under adequate supervision. The matter involved questions of fact, and the principle of the *Robinson* case, *supra,* applies as well in a case where the verdict was for the defendant if it cannot be said that the verdict was not supported by evidence. *Campbell* v. *Hackfeld,* 20 Haw. 245.

We are of the opinion that the trial court erred in granting a new trial upon the ground that in certain particulars the defendant did not comply with the requirements of his contract with the loan fund commission in regard to the method of construction of the wall. Aside from any questions of fact that may have been involved as to whether the defendant did in fact fail to observe the provisions of his contract, which would have been for the jury to answer, there was the further question for the jury to decide upon the evidence whether the departure from the terms of the contract resulted in an unsafe wall or whether, notwithstanding that fact, the method of construction pursued was a reasonably safe and prudent one under all the circumstances. It cannot be said that the failure of the defendant to construct the wall in the method prescribed by his contract was, as matter of law, negligence on his part and the proximate cause of the plaintiff's injury. The method of construction followed by the defendant concerned the other party to the contract, but did not concern the plaintiff unless it constituted negligence which caused his injury, and that question, as we have just said, was one for the jury to decide. In *Mejea* v. *Whitehouse,* 19 Haw. 159, 161, where a government contract required that the contractor should "provide such precautions as may be necessary for the prevention of accidents to life or property and shall assume the responsibility of all damages or costs

resulting therefrom," this court said, "we cannot construe this as a contract of insurance for the benefit of the employees." The defendant at most owed the plaintiff the duty of providing him a safe place in which to work, and to pursue a reasonably safe method of construction, but he owed him no duty to exactly follow the terms of the contract with the loan fund commission. The known risks of ordinary perils incident to and inherent in doing work of such character as that involved here were, of course, assumed by the plaintiff. Plaintiff's counsel makes no contention to the contrary. We think, likewise, that the court erred in assigning as a reason for granting a new trial the fact that the space for the roadway between the two walls had not been filled up as the wall-building progressed, regarding it as conclusive evidence of negligence on the part of the defendant. Here the court substituted its judgment for that of the jury, and turned a question of fact into a matter of law. To say that the wall could not have fallen as it did if the roadway had been filled in does not solve the question, for the method of construction may have been prudent and appropriate, and the wall reasonably safe without the filling being done, and the jury could have found this from the evidence. "The true question for the jury is not whether the master could have done something to prevent the injury; but whether he did anything which, under the circumstances, in the exercise of ordinary care and prudence, he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken." 3 Labatt's Master and Servant (2nd ed.), p. 2502. See *Southern Pacific Co.* v. *Seley,* 152 U. S. 145; *Foley* v. *Pettee Machine Works,* 149 Mass. 294; *Leonard* v. *Collins,* 70 N. Y. 90; *Naylor* v. *C. & N. W. R. Co.,* 53 Wis. 661; *Grattis* v. *K. C. P. & G. R. Co.,* 153 Mo. 380, 404; *Simmons* v. *C. & T. R. Co.,* 110 Ill. 340, 347; *Hewitt* v. *F. & P. M. R. Co.,* 67 Mich. 61. Actionable

negligence consists in the failure to do what a reasonable and prudent person would ordinarily have done under given circumstances, as well as the doing of what such person would, under the circumstances, not have done. In either case the question of negligence is primarily one for the jury under proper instructions, and becomes a matter of law for the court only where there is no conflict in the evidence and but one inference can reasonably be drawn from the facts. 29 Cyc. 629; *Ward* v. *I. I. S. N. Co.*, 22 Haw. 66 and 488, and numerous cases cited in those opinions. The application of this well established rule to a case where, as here, the negligence alleged was not clearly shown and could be found, if at all, only from a combination of facts depending to some extent upon conflicting testimony and involving a consideration of what was reasonable and prudent under all the circumstances, and the proximate cause of the plaintiff's injury was left to inference from such testimony and circumstances, can lead to but one conclusion, namely, that the question was for the jury and that the verdict settled it.

We find, therefore, that the reasons given by the court below for granting the motion for a new trial were unsound and cannot be sustained. The motion itself based, as above stated, on the grounds that the jury had overlooked certain of the instructions given by the court and that the verdict was contrary to the law and the weight of the evidence, was ill founded. In a case such as this, where instructions are given advising the jury as to what their verdict should be under different views of the evidence and according to how they might find the facts, it is impossible to say that in arriving at a verdict for the defendant the jury overlooked those instructions which would have required a verdict for the plaintiff had they found certain facts to have been established. Rather must it be assumed that the jury found the facts to have been as contended for by the

successful party. Finding as we do that the verdict rendered was supported by substantial evidence we are not concerned with the question whether it was supported by the weight or preponderance of the evidence.

The exception to the order granting a new trial is sustained and the order is set aside. The case is remanded to the circuit court.

*J. Lightfoot* for plaintiff.

*A. M. Cristy* (*J. W. Cathcart* and *Frear, Prosser, Anderson & Marx* with him on the brief) for defendant.

### CONCURRING OPINION OF QUARLES, J.

I concur in the conclusion reached in this case. I have carefully examined the instructions given by the trial court and find that such instructions were ably given and fully cover all of the points of law to have been considered by the jury and were very fair, and I am of the opinion that no prejudice resulted to the plaintiff, appellant, from any of said instructions. It is well settled in this jurisdiction that where the proximate cause of an injury is in doubt or to be inferred from one or more different state of facts, the question of proximate cause is one for the jury and not for the court. Under this rule the trial court properly submitted to the jury the question of proximate cause. As shown by the evidence in the case, the accident *might* have been caused by one or more conditions and might not have been caused by any act on the part of the defendant but by negligence on the part of the plaintiff and his fellow workmen. The question having been fairly left to the jury, and the jury having found in favor of the defendant, and therefore finding that the proximate cause of the injury was not traceable to any neglect of the defendant, the verdict of the jury should not be disturbed. To set the verdict aside and grant a new trial is not in harmony with the rule announced in *Robinson* v. *H. R. T. & L. Co.,* 20 Haw. 426,

and in *Ward v. I. I. S. N. Co.*, 22 Haw. 66 and 488, and under the established rule of those cases the verdict was erroneously set aside. While a large discretion is vested in trial courts in the matter of granting new trials, yet where there is evidence supporting the verdict and no prejudicial error of law committed during the trial it is an abuse of discretion to set the verdict aside, although the trial judge may be firmly convinced that under the law and the evidence the jury should have arrived at a different verdict from that returned. Personally I feel that if I had been a member of the jury I would have felt that it was my duty, under the court's instructions and the evidence in the case to have returned a verdict in favor of the plaintiff, but, the case being fairly submitted to the jury, upon evidence more or less conflicting, and the question of proximate cause having been submitted to it, I am of the opinion that the verdict should stand. I will quote the closing sentence in instruction No. 2, given by the court to the jury, as follows: "But if it (the wall upon which plaintiff was working) became unsafe subsequent to that time (the time plaintiff commenced work on the wall) on account of the acts of the plaintiff, or the plaintiff and his co-employees, it would not fall within the rule requiring the master to furnish a safe place to work." This and other instructions informed the jury that the plaintiff could not recover if the accident resulted from his own negligence or that of his fellow employees, and under my view of the evidence, which covers nearly four hundred typewritten pages, the jury could·have found from the evidence that the accident resulted from negligence of plaintiff and his fellow workmen or could have found that the accident resulted from the negligence of the defendant. Under this state·of facts the verdict is binding upon the court and should not be disturbed.