PETER LOUIS *v.* MAGGIE VICTOR, DOING BUSINESS UNDER THE FIRM NAME OF VICTOR'S EXPRESS.

MAGGIE VICTOR, DOING BUSINESS UNDER THE FIRM NAME OF VICTOR'S EXPRESS, *v.* PETER LOUIS.

## No. 1491.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

SUBMITTED JUNE 26, 1923.          DECIDED JULY 23, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

NEW TRIAL—*sufficiency of evidence to support verdict.*

A verdict of a jury cannot be set aside, or a new trial granted, when there is substantial evidence, more than a mere scintilla, sufficient to support the verdict.

EVIDENCE—*inferences of fact—province of jury.*

When in any action based on negligence the circumstances disclosed by the evidence are susceptible of more than one inference respecting negligence or the absence thereof, the question of negligence must be left to the jury and the verdict cannot be disturbed.

OPINION OF THE COURT BY PERRY, J.

In the first of the above entitled causes, both being actions at law for the recovery of damages, the plaintiff sued the defendant upon the theory that in an automobile

accident referred to in the declaration, the defendant was guilty of negligence which was the proximate cause of injury to plaintiff's Cadillac automobile and that the plaintiff was free from negligence.   In the second case, the plaintiff proceeds upon the theory that the negligence which was the proximate cause of the injury to her Moreland truck was that of the defendant and that she was wholly free from negligence.   By consent of the parties and order of the court the two causes were tried together. The jury rendered separate verdicts, in the first case finding for the defendant and in the second case finding for the plaintiff for recovery of $750 damages.   Thereafter, upon motion, the presiding judge set aside the two verdicts and ordered a new trial in each case.   The cases come to this court upon the exceptions of Maggie Victor to the orders setting aside the verdicts and granting new trials.

While in one or two of the earlier Hawaiian cases there are expressions to the effect that a verdict of a jury in a law case may be set aside if it is contrary to the weight of the evidence, later Hawaiian cases make it clear, and it is now in this jurisdiction too well settled to admit of doubt, that the verdict of a jury in a law case upon a disputed issue of fact will not be set aside if there is any substantial evidence, more than a mere scintilla, sufficient to support the verdict and the findings which it indicates to have been made by the jury.   See, for example, *Ahmi* v. *Cornwell,* 14 Haw. 301; *Kapiolani Est.* v. *Cleghorn,* 14 Haw. 330, 338; *Smith* v. *Hamakua Mill Co.,* 14 Haw. 669, 677; *Robinson* v. *H. R. T. & L. Co.,* 20 Haw. 426, 431; *Holstein* v. *Benedict,* 22 Haw. 441, 445; *Martin* v. *Wilson,* 23 Haw. 74; *Makainai* v. *Lalakea,* 25 Haw. 470, 476; *Est. of Heeb,* 26 Haw. 538, 539.   The question is not whether there was evidence in the case sufficient to support a verdict for Peter Louis.   It may

be assumed that there was such evidence. It may even be assumed that, if it were in our power to decide the issues of fact involved, our decisions would have been in favor of Peter Louis; but it is not in the power of this court to make findings of fact or to pass upon the credibility of the witnesses or of the weight of the evidence. If there was any substantial evidence from which reasonable men, acting conscientiously and with a desire to arrive at the truth and to do justice, could reasonably find that Peter Louis' servant, the driver of the Cadillac automobile, was negligent, that his negligence was the proximate cause of the collision and the resulting damage, and that Maggie Victor's servant, the driver of the Moreland truck, was free from negligence contributing to the collision and the injury, then the verdicts must be allowed to stand.

The undisputed evidence was that at a point in Kamehameha IV road in the Kalihi district a few hundred feet mauka of King street the road turns almost at right angles towards Waialua; that the Moreland truck driven by one Kaea, a servant of Maggie Victor, was proceeding mauka on Kamehameha IV road on a day named; that the Cadillac automobile, driven by one Moses Lasada, a servant of Peter Louis, was proceeding on the same road towards King street and the main portion of the city of Honolulu; that a collision between the two occurred at the above mentioned turn of the road; that both vehicles were badly damaged; that at and immediately prior to the collision a Ford automobile was parked on the Waikiki side of Kamehameha IV road at or about the turn, with its Waikiki side about one foot away from the Waikiki curbstone; that at the point where the Ford automobile was parked the road is twenty-two feet in width; that the Ford automobile was five feet wide; that the Moreland truck with its tail-board dropped is eighteen

feet long; that the truck weighs 5300 pounds and was "noisy" in operation; that on the occasion in question the truck had a load of window-sash; that immediately after the collision, when the two vehicles had come to a stop, the portion of the truck nearest the parked auto was one foot distant from it and its rear end was practically at the westerly edge of the road; that the driver of the truck did not toot his horn when approaching the corner or turn in the road; and that on the westerly and makai side of Kamehameha IV road there was at the time of the collision a hedge and trees so situated as to prevent a view from either direction of approaching vehicles for a considerable distance.

In general the evidence on behalf of Peter Louis was to the effect that the Cadillac in approaching the corner and for some considerable distance before reaching the corner was proceeding at a speed of ten miles an hour (one of Louis' witnesses said ten to twelve miles an hour) and that its driver tooted his horn "continuously" for a long time before reaching the corner,—"for about half a block back" one witness said.

The driver of the truck testified that he proceeded mauka on Kamehameha IV road from King street "pretty slow in order to make that turn", at ten miles an hour; that this was his rate of speed when approaching the Ford automobile which was parked as above stated and that he was endeavoring to pass as close as possible to the parked Ford immediately before and at the time of the accident; that his truck was noisy in operation and that he did not hear any horn sounded from beyond the turn of the road; that the Cadillac hit his truck almost immediately after he first saw the Cadillac; and that it came upon him suddenly. Another witness, Albert Silva, testified that immediately prior to the accident he proceeded mauka along Kamehameha IV road and that he

was "just turning the corner" when he first saw the Cadillac; that the Cadillac tooted its horn, "just a short toot was all;" that the witness was "just about between the sidewalk and three feet away from the speedway;" that upon seeing the Cadillac he "jumped towards the fence" and that "if I didn't jump I would get run over;" that the Cadillac was "going fast;" and that from the time he heard the toot of the horn to the time of the collision "just gave me enough time to get on the sidewalk and I looked back and there was a bump." "You heard the crash?" "I heard the bump."

W. J. Lillis testified that he is "chief of the traffic squad," was formerly examiner of chauffeurs, has had eighteen years of experience in handling and driving automobiles and that during that period of time he had experience "in the matter of observation of collisions and force of collisions;" that he was on the scene of the accident very shortly after its occurrence and noted the marks made on the roadway by the machines in the course of the collision; that "there was a mark showing about two feet where she" (referring to the truck) "skidded over",— "about two feet skid-marks"; that there were no marks on the roadway to indicate that the Cadillac had been pushed backwards; that between the Waikiki end of the truck and the Waikiki curbstone there was no car when the witness arrived and that "I just barely got through myself," meaning that there was barely room sufficient for his Essex car to pass through. This witness was asked, "From your knowledge and experience in the observation of automobile accidents, in the driving of automobiles, did the condition of those cars, the marks upon the ground, indicate anything as to the speed of the vehicles? * * * Can you give us any information from your observation as to the relative speeds of the two cars, whether one was going faster or slower than the other?"

After objections by counsel and a question by the court, "Have you an opinion on that?" the witness said: "My opinion is that the Cadillac was coming around that turn about twenty miles, I should judge, to throw that truck over about two feet, and it was a big heavy truck" and "I figure the truck was going slower."

Perhaps there is room for doubt as to whether under the circumstances an opinion from the witness was admissible. The point, however, need not be decided. If it was admissible, the jury had before it not only the evidence of Silva that the Cadillac was "going fast" and the truck "very slow" but the evidence of Lillis that the Cadillac was going at twenty miles per hour. If the testimony was not admissible, it must be on the theory that the jurors were as well qualified as the witness to draw their own inferences, from the fact of the two-foot skid-marks, as to the rate of speed that the Cadillac was going in order to push the truck for that distance; and, in the latter event, if the jurors should conclude that the Cadillac was traveling at the rate of twenty miles per hour immediately prior to and at the time of the collision, this court would be unable to interfere with that inference and finding. It was legally possible upon all of the evidence for the jurors to disbelieve the testimony of Lasada, the driver of the Cadillac, and of the three soldiers who testified for Peter Louis that the Cadillac was traveling at the rate of only ten or twelve miles per hour. Two of the three soldiers testified to having received repeated favors from Lasada in the way of free rides in the automobile. It was possible for the jurors to have conscientiously found that the witnesses for Peter Louis exaggerated when they testified to repeated and "continuous" tooting of the horn by Lasada for a long distance prior to reaching the turn in the road. If, as against this testimony, they believed Silva's evidence that there was only one

toot of the horn and that practically at the turn, just in time for him, Silva, to jump out of the way, they acted within their powers and the court cannot substitute any judgment of its own for that of the jury. Again, there was abundant evidence to show that Moses Lasada, the driver of the Cadillac, had in recent years been twice convicted for vagrancy and served two sentences of one year each therefor, that he had been on three other occasions convicted of gambling, receiving sentences of fine and imprisonment, and that on one other occasion he was convicted of hiring an auto and refusing to pay the fare, receiving for this a sentence of fifteen days' imprisonment. The jury might well have found that this man was of a low standard of character and that his testimony as a whole was unworthy of credence. Everett Golden, a witness for Louis, said that the collision "threw both cars out a fraction of an inch" and Lasada testified that "the truck hit my car so hard that it drove my car back." It was within the province of the jury to accept as against this testimony the evidence of Lillis that there were no marks indicating that the Cadillac had been pushed backward and that there were marks two feet in length indicating that the truck had been pushed by the Cadillac.

In setting aside the verdicts, the trial judge gave two main reasons: one was that the truck had no right to be on the left side of the road and that the driver of the truck did not toot his horn. The presence of the parked automobile on the right-hand side of the road, leaving at most a width of only sixteen feet of unoccupied roadway, could well have been regarded by the jury as a sufficient reason for the truck's proceeding nearer to the left-hand side than would otherwise have been the case. The driver of the truck testified that he proceeded as close to the Ford automobile as he could. Maggie Victor was entitled to the judgment of the jury as to whether this evidence was true

and it was within the province of the jury to believe that it was true. It was not unlawful for the truck to proceed to the left, past the parked automobile, as near to it as was reasonably practicable. The failure to toot the truck's horn was undisputed but it was for the jury alone to determine whether, under all of the circumstances, that failure contributed to the collision or was utterly immaterial. If the jury believed from the evidence, as it was legally possible under the circumstances for it to believe, that the Cadillac approached the corner at a speed of twenty miles per hour; and if it should infer from the evidence, as it would have a right to do, that the driver in approaching the corner was engaged in conversation with the soldier seated beside him and was inattentive to his duty—it could well have found that a tooting of the horn on the truck would not have avoided the accident and that the failure to toot it did not contribute to the accident. Where evidence is susceptible of two or more conflicting inferences on the subject of negligence, the evidence must be left to the jury for its consideration as to what the proper inference is.

Under all of the circumstances as they existed at the trial, the cases were properly submitted to the jury for the latter's determination and the verdicts as rendered cannot be set aside. The exceptions are sustained and the orders setting aside the verdicts and granting a new trial are reversed and set aside.

*Brown, Cristy & Davis* for Maggie Victor, appellant.

*Lightfoot & Lightfoot* for Peter Louis, appellee.