## ISAAC SOLOMON *v.* NIULII MILL & PLANTATION, LIMITED.

### No. 2054.

ARGUED OCTOBER 11, 1933.　　　　DECIDED NOVEMBER 2, 1933.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action for damages arising out of a trespass to land. The jury returned a verdict in favor of the plaintiff and assessed damages at $3030. Judgment was entered accordingly. The defendant moved for a new trial upon eighteen grounds, one of them being that the verdict was excessive. The court below granted the motion in general terms, without specifying the ground upon which it acted. The plaintiff brings the case here on exceptions.

After the case reached this court and after certain preliminary proceedings were had (*Solomon* v. *Niulii Mill & Plantation, Ltd., ante* 571) it was admitted that the sole ground upon which the motion was granted was the excessiveness of the verdict. By agreement of the parties the question presented for our consideration is whether the motion was properly granted on the ground specified.

The trespass complained of was the wrongful diversion of water from the plaintiff's land situated on the Island of Hawaii, and upon which it was alleged there stood at the time of the trespass a crop of taro. The items of damage claimed to have resulted from the trespass were the destruction of or injury to the taro, destruction of the seed of the taro and injury to the land itself which rendered it useless for the cultivation of taro from August 26, 1927, to July 18, 1929.

It is alleged in the complaint that the trespass was committed on, to-wit, August 26, 1927, and that there was then standing on the land a crop of taro. The court below gave at the defendant's request the following instruction: "The court instructs the jury that if they believe from the evidence that plaintiff's taro or seed thereon growing on his land at Niulii on August 26, 1927, was destroyed or damaged from any cause or act done or neglect of duty prior to August 26, 1927, no matter whether it was the

fault of the defendant plantation or not, that is to say, if the jury believes the taro was rotten on August 26, 1927, from some cause occurring before that date, the plaintiff cannot recover from defendant any damages for his said taro, because in that case the trespass, if any were committed, would have occurred prior to the time of August 26, 1927, alleged in the amended complaint." In this instruction the court very definitely said to the jury that if it believed from the evidence that the taro and seed were already destroyed on August 26, no matter from what cause, no damages could be awarded the plaintiff for their loss. It was at the defendant's request that this issue of fact was left to the determination of the jury.

It is now contended by the defendant that it is shown by the plaintiff's own testimony that on August 26, 1927, the taro was in a rotten and worthless condition and that the same was true of the taro seed, and therefore, as a matter of law, he was not entitled to recover anything on account of either of these alleged items of damage.

In considering the defendant's contention we notice that among the twenty-seven instructions which it requested in not one was the judge asked to exclude from the consideration of the jury any damage arising out of injury to or destruction of the taro and destruction of the seed. This of course was not a waiver of the defendant's right to urge its present view of the evidence but it is indicative of what it thought when the instructions were requested.

If the defendant's contention is sound, obviously the verdict was excessive and the ruling of the lower court should be sustained. This would be so because, exclusive of the loss of the taro and the seed, the loss of the use of the land (in other words, its rental value, which, according to the evidence, did not exceed $566) was the only damage for which the defendant was liable.

Coming to the testimony as it appears in the transcript we find that Isaac Solomon, the plaintiff, after he had testified in regard to the diversion of the water from his land in 1926 and the consequent injury to the crop of taro that was then standing on the land, gave the following answers to the following questions: "Q Coming to August 1927, was there any taro on your land then? A Yes; good taro too at that time. Q Was the taro young taro or mature taro? A It was mature, ready to be harvested." Right after this the following questions were propounded to Solomon and the following answers given: "Q What became of that taro? A The plantation at that time went up and shut the water off entirely. Q How did they shut the water off? A By a flume all along the ditch and along the pipe. Sometimes above the ditch and sometimes a little further up. They move that flume from place to place. Q What date was that your taro was damaged this time? A Can't exactly remember. Sometime in August 1927. Q Do you remember the date in August? A The 26th or 27th. I am not sure. Q What happened at that time? A The taro beds were all dried up. Not a drop of water coming to my premises. The taro was all rotten. Taro beds all cracked."

It cannot be denied that Solomon testified that on August 26 or 27, 1927, the defendant shut off the water from his land and that at that time there was standing on the land a crop of good mature taro. It also cannot be denied that in response to the question, "What happened at that time?" Solomon testified that the taro beds were all dried up and cracked and that the taro was all rotten.

We think it is not the function of this court to say that there is an irreconcilable inconsistency in Solomon's testimony and therefore he must be held bound as a matter of law by that portion which the defendant claims was

against him and that that portion which was in his favor must be ignored. The jury, whose province it was to reconcile apparent inconsistencies and conflicts in the evidence, might very reasonably have found that there was no inconsistency in the testimony given by Solomon. Considering what he had already said about the condition of his taro on August 26 or 27, both Solomon and the jury would have been justified in believing that the information sought by the question, "What happened at that time?" was the condition of the taro after August 26 or 27. This interpretation of the question would render Solomon's answer consistent with his prior testimony on this subject.

To put it another way, if the jury believed from all the evidence, as it must have done, that the taro was in good condition on August 26 or 27 and that the diversion of the water occurred on one of those dates, as men of experience they would probably know that it would be impossible for the taro to become rotten and the beds cracked and dry on the very day the trespass was committed and that therefore when Solomon testified that such was the condition of the crop and the land he must have referred to a time subsequent to August 26 or 27.

We think, for reasons that will presently appear, the jury would have been justified in believing that Solomon's testimony as to the condition of the taro on August 26 or 27 did not stand alone but that it was corroborated by the testimony of John Craik, the manager of the defendant plantation, who was called by the defendant.

It appears from the transcript of the testimony that on August 26 or 27 Solomon and a police officer named Herman Keliikipi saw Craik in the defendant's cane field, which was right above Solomon's taro patches, and that he (Solomon) spoke to Craik about shutting his water off. Craik testified as follows regarding this meeting: "Q Do

you remember Herman Keliikipi coming up there with Solomon? A I have a faint recollection. Q That is the time I am now speaking of. A It is much the same; that there was no water and he complained about his taro. Q What did he say? A That he had not enough water and his taro was damaged. Q Did he name any figure of damages? A Yes he named a figure of something like $1600.00. Q Did you do anything or say anything? A I told him that was ridiculous. And I told him he was getting more than his share of water and that I had always taken particular care to see he got it. He denied it, and I had a look at the taro. Q How did it look? A It looked healthy to me. Q Did it look dry? A No. Q Did you see it later on, in the same year? A Yes. Q How did it look then? A Didn't look as though it was rotten. It was not dry. Q Was there some damage done that taro? A I don't know. I don't know taro. There may have been, but it seemed all right to me."

It is a fair inference that on the very day Solomon made his complaint to Craik the latter, while the matter was fresh in his mind, went down to the taro patches, which were right below where he was, and "had a look at the taro" and found that "it looked healthy." This view is strengthened by Craik's testimony that later on in the same year he again saw the taro and it "didn't look as though it was rotten. It was not dry." If this was the conclusion reached by the jury, as it well might have been, it furnished additional evidence of the condition of the taro on August 26 or 27.

As we view the testimony there was substantial evidence amounting to more than a scintilla to justify the inclusion by the jury of damages for the destruction of or injury to the taro and the destruction of the seed. The contention of the defendant, therefore, that these items should as a matter of law be excluded cannot be sustained.

To hold otherwise would be to exercise an extrajudicial function.

In *Louis* v. *Victor*, 27 Haw. 262, 263, the court said: "While in one or two of the earlier Hawaiian cases there are expressions to the effect that a verdict of a jury in a law case may be set aside if it is contrary to the weight of the evidence, later Hawaiian cases make it clear, and it is now in this jurisdiction too well settled to admit of doubt, that the verdict of a jury in a law case upon a disputed issue of fact will not be set aside if there is any substantial evidence, more than a mere scintilla, sufficient to support the verdict and the findings which it indicates to have been made by the jury. See, for example, *Ahmi* v. *Cornwell*, 14 Haw. 301; *Kapiolani Est.* v. *Cleghorn*, 14 Haw. 330, 338; *Smith* v. *Hamakua Mill Co.*, 14 Haw. 669, 677; *Robinson* v. *H. R. T. & L. Co.*, 20 Haw. 426, 431; *Holstein* v. *Benedict*, 22 Haw. 441, 445; *Martin* v. *Wilson*, 23 Haw. 74; *Makainai* v. *Lalakea*, 25 Haw. 470, 476; *Est. of Heeb*, 26 Haw. 538, 539."

The defendant further contends that even if the plaintiff was entitled to damages for the destruction of or injury to his taro and the destruction of the seed and that if he was also entitled to damages for loss of the use of his land the evidence was insufficient to justify the amount awarded by the jury. This contention cannot be sustained. There was substantial evidence that the damages sustained by the plaintiff on account of these items were even in excess of the verdict.

For the foregoing reasons it was error to set aside the verdict and grant a new trial. The exception is therefore sustained and the order of the circuit court is reversed.

*J. V. Hodgson* (*E. C. Peters* with him on the briefs) for plaintiff.

*H. Edmondson* (*Smith, Wild & Beebe* with him on the brief) for defendant.