# EMIL CARREIRA AND DOLINDA CARREIRA
## *v.* TERRITORY OF HAWAII.

### NO. 2921.

ARGUED OCTOBER 23, 1953.                    DECIDED APRIL 28, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

514

OPINION OF THE COURT BY STAINBACK, J.

Plaintiffs were the parents of a twelve-year old boy, Robert Carreira. On May 27, 1949, Robert Carreira was a student in the sixth grade at the Liholiho school, a public school of the Territory of Hawaii. On this date a school picnic and outing had been arranged at Waikiki beach in the area near the public baths. Robert Carreira and his twin brother Ralph received written permission from their mother to attend the picnic and to go swimming. The group consisted of approximately one hundred twenty-five to one hundred fifty sixth-grade students and they were accompanied by four school teachers. There were also many children from several other schools, about five hundred all together.

The group settled down in the vicinity of the Waikiki Natatorium and after visiting the zoo those with permission from their parents were allowed to go swimming. Robert went to the natatorium to swim at approximately 10:30 a.m. in blue denim trousers. Robert was a good swimmer. In charge at the natatorium was the manager, a matron and a lifeguard. The four teachers from time to time visited the pool to make frequent inspections. Robert and the other children left the pool to have lunch at approximately 11:45 a.m. During the rest period one of Robert's teachers told him it was very dangerous to swim in long trousers. After lunch Robert asked for and received permission from one of his teachers to go swimming again for a quick dip and he went back to the natatorium between 12:30 and 12:45 p.m. He was accompanied

by his brother Ralph. Ralph did not go in swimming but watched his brother swim and play on the raft with other boys, approximately fifteen being on the raft. He saw them throwing each other off the raft. At that time there were approximately five hundred persons in and about the pool and it was impossible to see the bottom of the pool because the silt of the natural bottom was stirred up by the swimmers. The lifeguard was on duty at the pool from 9:00 a. m. until 1:00 p. m. when he left for lunch. At the time the guard left for lunch there was no one in or about the pool except older persons, the children having been called out of the natatorium.

The teachers rounded up the students to return to the school about 1:00 p. m. and Robert was missing. He was seen by one of the teachers after lunch and before the rounding up of the children sitting on one of the benches near the entrance to the bathhouse. Somewhere between 1:10 and 1:15 p. m. one of the teachers, Mrs. Chung, with some of the students, began looking for Robert. They looked for him in the dressing room; he was not there. Mrs. Chung found a shirt and someone told her it belonged to Robert. Mrs. Chung then immediately notified the matron of the natatorium that one of the boys was missing. This took place at approximately 1:15 p. m. Some of the children told Mrs. Chung that Robert had gone to the zoo or perhaps to Kuhio beach. When unable to find Robert after a brief search, Mrs. Chung reported back to the superintendent who advised her to get in touch with the lifeguard who was having lunch at the concession. Mrs. Chung contacted the lifeguard about 1:20 p. m. The lifeguard immediately left his lunch, returned to the natatorium, telephoned Mr. Adams, the captain of the lifeguards, at Kuhio beach and went to pick up Mr. Adams. The lifeguard returned with Mr. Adams at approximately 1:30 p. m. In the meantime, several volunteer

lifeguards started diving for the missing boy. After the regular lifeguard returned with Mr. Adams, they were all lined up and commenced systematic dives in search of the missing boy. On the third dive a volunteer lifeguard located the body of Robert and brought him to the surface. The City and County emergency hospital was notified and an ambulance arrived about 2:00 p. m. As soon as Robert was taken from the pool artificial respiration was given him for approximately fifteen minutes until the arrival of the ambulance. Upon the arrival of the ambulance with the doctor and two attendants, the resuscitator was used for approximately an hour and a half when the doctor advised that it was then useless.

Suit against the Territory was filed on June 7, 1951, under the provisions of Act 143, Session Laws of Hawaii 1951, waiving the Territory's immunity. The complaint in substance charged negligence on the part of the Territory in operating and maintaining a swimming pool known as the War Memorial Natatorium of Honolulu in that it did not maintain sufficient lifeguards to protect the swimmers and users of the pool. It further alleged that the defendant encouraged and induced Robert Carreira to attend the picnic of the class of the sixth grade of the Liholiho school and carelessly supervised and directed the picnic of the students of the Liholiho school, and that while lawfully using the pool and through no neglect on his part Robert Carreira was drowned in the pool so negligently maintained and operated by the defendant; that the defendant knew or should have known that reasonable care required sufficient lifeguards or other protective measures to safeguard the life or lives of the children using the pool, and that the defendant failed and neglected to provide such lifeguards. Plaintiffs prayed for damages in the pecuniary value of the services of Robert Carreira during his minority in the sum of $10,500.

At the conclusion of plaintiffs' case the defendant made a motion to dismiss which was granted.

The single question before this court is whether the trial judge committed error in dismissing plaintiffs' suit.

Where the facts are disputed and reasonable men might differ on the facts or the inferences which may be reasonably drawn from the facts, the question of negligence is left to the jury under proper instructions; but where there is no conflict from the evidence and but one inference can be drawn from the facts, it is the duty of the court to pass upon the question of negligence and proximate cause as questions of law. (*Ferrage* v. *H. R. T. & L. Co.,* 24 Haw, 87; *Martin* v. *Wilson,* 23 Haw. 74; *Ward* v. *I.-I. S. N. Co.,* 22 Haw. 488, *aff'd* 232 Fed. 809.)

Operators of bathing beaches or pools owe a duty of ordinary care in the supervision, construction and maintenance of the pool but are not insurers of the lives of swimmers.

As stated in *Curcio* v. *City of New York,* 275 N. Y. 20, 9 N. E. (2d) 760, 762: "The city was not an insurer of the lives of those who used the pool. Its only duty was to exercise ordinary care in its supervision, construction, and maintenance of the pool. * * * The duty of exercising ordinary care required the defendant to provide an adequate degree of general supervision. * * * The city performed its duty in furnishing a lifeguard, experienced and competent."

The rule is also stated in *Lyman* v. *Hall,* 117 Neb. 140, 219 N. W. 902: "The duty to exercise ordinary care to protect patrons of a public bathing resort conducted for private gain does not make the proprietor an insurer of their safety."

There are many cases dealing with drownings in bathing pools and resorts. No new principles of the law of negligence are involved; the burden of proof is on the

plaintiff to show that the defendant is guilty of negligence which was the proximate cause of the injury or damage to plaintiff.

The question here presented is whether the record shows evidence which would warrant a jury in finding that there was a lack of ordinary care that was the proximate cause of the death of plaintiffs' child, Robert Carreira.

To repeat a part of what has been set forth *supra*, the evidence shows that the pool was crowded, that no one saw what happened to Robert Carreira; the last time he was seen in the water by his brother there were some fifteen on a raft engaged in pushing each other off into the water; no one saw Robert disappear; no one saw him struggling in the water. As to when or under what circumstances he was drowned the record is absolutely silent except that it was about one o'clock when the students were collected to return to the school when he was missed.

Assuming that a jury might have found the Territory negligent in not providing an adequate degree of supervision in that it should have had more than one lifeguard on duty, if no one of the five hundred bathers or numerous boys playing on the raft saw Robert disappear there can be no assumption that any one of such additional lifeguards would have seen Robert when he disappeared. Consequently, such negligence would not have been the proximate cause of Robert's death.

As stated in *Mullen* v. *Russworm*, 90 S. W. (2d) 530, the court, in finding in favor of the defendant, said: "Such being the circumstances, it cannot be said that the presence of two or three more guards would have been of any avail. If none of the large number of people near him saw the little boy's danger, it is not likely that his danger would have been perceived by guards on the side of the pool whether their number was two or four. * * * it is incumbent upon the plaintiff to show three things: First,

a breach of duty which defendant owed to him; second, a negligent breach of that duty; and, third, injuries received thereby resulting proximately from that breach of duty. * * * If it be said that the plaintiff in this case has shown a breach of duty that defendants owed to him or to his child, and a negligent breach of that duty, still we find no definite proof, direct or circumstantial, that defendants' breach of duty proximately caused the injury sustained by plaintiff in the loss of his son."

In the case of *Margaret Maher, Adtrx* v. *Madison Square Garden Corp.*, 242 N. Y. 506, 152 N. E. 403, a lad of fourteen years was last seen paddling in the water up to his waist; there were two lifeguards on duty and the pool was crowded with people; no one saw the boy in trouble, no one saw him disappear. Later he was found drowned. The court stated in holding for the defendant: "Though the swimming pool was crowded at the time, apparently no one saw the fatality. We know only that he was playing in the pool one afternoon, and his dead body was found in another part of the pool the next morning, and that death was caused by asphyxiation. No inference can be drawn that by act or omission of the defendant or any of its employees the boy was placed in a position of danger which caused his death, or that any greater care by the defendant could have averted accident."

In the case of *Scott* v. *City of Long Beach*, 292 Pac. 664, there were no witnesses to the drowning. The court ruled: "There is an entire lack of evidence as to the cause of the accident. Appellant contends that the jury may have drawn certain inferences of negligence on the part of the defendant. It is true many conjectures may be indulged as to the cause of the accident, some favorable to the defendant, but inference are not to be drawn from conjectures. The burden of proof is on the plaintiff. In the absence of any evidence as to the cause of the accident,

that burden has not been sustained."

In *Hahn* v. *Perkins*, 228 N. C. 727, 46 S. E. (2d) 854, a similar ruling was made under like circumstances. Also, in *Crone* v. *City of El Cajon*, 24 P. (2d) 846, a similar ruling was made, wherein the court stated: "* * * A number of youths, all expert swimmers, were in the pool and over the spot where the body was found. None of them, nor any of the many bathers in the pool, saw Emmitt sink or had any idea he was missing until about the time his body was found. The city of El Cajon was not required to insure the safety of the bathers in its pool, nor can a lifeguard guarantee that no bather will drown in the water he is patrolling. * * * Would two lifeguards have prevented the tragedy? If ten lifeguards had been employed would any one of them have been more likely to have seen the boy sink into the water than the considerable number of bathers who were swimming and diving near the spot where he must have disappeared?"

In the case of *Nolan* v. *Young Men's Christian Ass'n.*, 243 N. W. 639, 641 (Neb.), where it was urged that the failure of the guards to keep a proper lookout to observe the peril in which the drowned patron had become involved, the court said: "In this connection it is also urged that the guards and the defendant Flagler failed and omitted to keep a proper lookout to observe the peril in which Nolan had become involved. This contention is based upon the failure to notice the disappearance of Nolan and to miss him thereafter. Under the circumstances disclosed by the evidence such omission was not actionable negligence. In Lyman v. Hall, supra, in passing upon a similar contention it is said:

" 'Where many swimmers are engaged in aquatic sports in the same pool, it is common knowledge that divers disappear and return at other places without giving occasion for alarm or rescue. In the present instance no one knew

exactly when or where the bather disappeared. Without resorting to speculation or conjecture the jury could not properly find that, except for the failure of the guard to miss the bather and to notice that he did not promptly reappear, there would have been no loss of life.' "

Although it is not alleged in the pleadings, counsel for plaintiffs has strenuously urged that the failure to render prompt assistance when Robert was discovered missing was negligence resulting in his death.

In this connection counsel for plaintiffs cites the case of *Brotherton* v. *Manhattan Beach Improvement Co.,* 48 Neb. 563, 33. L. R. A. 599, where upon receiving a report that the decedent was missing the company's representative failed to institute a search in the water. However, it will be noted in that case the court found that the defendant had not provided a safe place for swimmers in that it had not provided any lifeguards. Proprietors of a bathing resort, in discharging the duty of ordinary care for the safety of patrons, may be obliged to keep someone on duty to supervise patrons and rescue any apparently in danger. The court does state that when ascertaining a person last seen in the water is missing, every effort should be exerted to search for that person in the water, but the finding of liability was based on the ground that the proprietor did not furnish adequate safeguards. This necessity for providing a guard was recognized in *Lyman* v. *Hall,* 117 Neb. 140, 219 N. W. 902, *supra.* In this case the defendant had two qualified employees in the capacity of guards who were on active duty at the time of the accidental drowning. These guards succeeded in bringing up the boy's body but efforts at resuscitation failed and the court held that defendant was not liable.

There is nothing in the record either to show that the utmost diligence would have enabled the servants of the defendant to have seen Robert in distress or to have re-

covered the body in time to have secured resuscitation. There is nothing to indicate when he went down under the water, how he went down under the water, whether by diving, or by sinking, or by struggling under the surface, or where he disappeared, or how far his body moved, if at all, from the place where he sank, or that an earlier search would have discovered him before his death. The death of a swimmer in a pool does not cast upon the proprietor the burden of excusing himself from any presumption of negligence. These matters would be pure speculation based on no evidence which would warrant a conclusion relative thereto. This is not a case where the doctrine of *res ipsa loquitur* may be invoked.

Order dismissing case affirmed.

*N. K. Chung* (*Chung, Louis & Chee* on the briefs) for plaintiffs in error.

*W. Yee,* Deputy Attorney General (also on the brief), for defendant in error.