Charles T. Major, J.
This is a claim to recover damages for personal injuries alleged to have been caused by the negligence of the State, through its officers, agents and employees, in the construction and maintenance of a beach, swimming facilities and park known as Northampton Beach.
This beach is located about one and one-half miles south of Sacandaga Park, Fulton County, New York, at Sacandaga Reservoir, called Sacandaga Lake. Claimant’s specific contention is that the State placed underwater obstacles or objects in the bathing area at the beach and failed to remove them, allowing the same to remain unmarked and without warning to users of the area which caused claimant’s injury.
The swimming area runs easterly and westerly (agreed by counsel), and has a sandy bottom extending southerly out into the lake. Its boundary is marked out by a one-fourth inch manila rope about 650 feet long anchored to a tree on each end of the area. The rope then circles through the water in a somewhat crescent shape and is kept afloat just over the surface of the water by connection to wooden floats about 25 feet apart. These floats are connected by link chains to anchors on the lake bottom. The chains are affixed to the floats by an eyelet, and to the anchors by means of a metal eyelet built into the cement block which constitute the anchors. The anchors are blocks of concrete made by employees at the park, sometimes being one half a nail keg, a square box, or large can filled with concrete. They are various shapes and sizes. The average size is five to eight inches high, and weighs about 50 pounds, more or less. These were laid on the bed of the lake. It was the custom of the park officials to reset the anchors, floats and attached rope line from time to time so that the depth of water between the float and water would be five feet. This was done at the opening of the beach on May 16, 1956. As the water receded from its shore line, as it did continuously every summer, the anchors, floats and ropes were moved out. On July 3, 1956, the day of the accident, the anchors, floats and ropes had not been moved out, and the depth of water at their location was only about three feet. The distance from the shore line to such float or buoy line was only 37 feet in front of the beach guard’s chair on the shore. The shore tapered off at a 16% grade. Between May 16, 1956, the date buoys were placed, and July 3, 1956, the date of the accident, the water had receded or lowered about two and one-half feet.
On July 3,1956, claimant and some friends went to this beach and took a lunch. A child was in the party and claimant played with the boy along the shore. Claimant had never been swim *104 ming in this water prior to this day. He was 26 years of age and about six feet tall. Just before 3:00 f.m., he went into the water, in front of, but just to the left of the life guard’s chair. He walked out so that the water came up to his waist line, then he dove or lunged forward toward the floating rope. He went downward in the water, and his head and shoulder struck one of the float anchors, dazing him and cutting him across the nose. He caught hold of the chain, pulled and guided himself upward and stood up. His companion helped guide him to the shore. He was given some treatment, later visited a doctor, and finally had an operation on his nose.
When claimant lunged forward to swim, he did not see the anchor and did not know it was there. At the time of the accident, the life guard was not present, but came around a short time later. There was no notice of any kind giving warning to the public as to these anchors under the floats. Claimant paid a fee to use the beach.
Claimant returned to work the next day, July 4, at the restaurant where he was employed and earned $75 per week. He continued to receive treatment to his nose, had X ray on July 17, 1956, and entered a hospital to have medical work done on his nose on September 11, 1956, and was released from the hospital on September 16, 1956. After remaining out of work an additional three or four days, he returned to work. He entered the hospital again on November 12, 1956. Altogether claimant lost 11 or 12 days’ work which he estimated at $150, without dispute. He contracted the following expenses: Amsterdam Hospital, $10 ; X ray, operating room service and care, September 11, 1956 to September 16, 1956, $114.90; emergency room on November 12, 1956, $10; Dr. Zullo, $5; Dr. Yiolyn, $950. Claimant suffered a comminuted compound fracture of the bridge of his nose, in which was first taken six sutures, and later he underwent the operation mentioned for nasal reconstruction, including plastic surgery. Claimant suffered a great amount of pain from this injury and treatment.
This beach was a place of pleasure and recreation for the public to promote health and enjoyment. The State provided, promoted and supervised swimming. Claimant was an invitee. The State owed the duty of reasonable care of its patrons. This duty involved diligence and care on the part of the State to know the water was a safe depth, and reasonably free of dangerous obstructions and hazards for swimming, diving, lunging and other activities usually carried on in water, and to warn patrons by signs or otherwise of any hazard, latent or hidden danger, such as the buoy anchors which were actually placed in *105 position by the State. The State, in addition to placing these anchors, which created a danger and a hazard, also knew the depth of the water and, therefore, knew or should have known the dangers and hazards which the public would encounter. The sign on the guard’s chair, reading “ warning The Public Use This Beach at Own Bisk No Life G-uard on Duty ” is of no consequence in this accident. No specific danger or hazard is mentioned and no inherent danger is obvious or foreseeable by the swimmers. Neither is it a defense for the State to say that there had been no similar accidents at the same place. On other occasions, the water may have been at its proper level and/or anchors not so close to divers. This claimant did not have that good fortune. The claimant assumed no risk and was guilty of no contributory negligence. The proximate cause of this accident was the negligence of the State by its improper, inadequate and negligent supervision and maintenance of the beach and swimming area, and the placing of hazardous and dangerous object without notice or warning in the water to be used for swimming.
By reason of the negligence of the State, claimant sustained damages in the sum of $1,239.90 for loss of wages, medical and hospital services and treatment, and $2,500 for injuries to his person, pain and suffering, making a total of $3,739.90.
The claimant is awarded the sum of $3,739.90.