Clare J. Hoyt, J.
These four actions, consolidated for trial, in which a jury was waived, are brought to recover damages for the wrongful death of six persons and for the personal injuries of a seventh person, all victims of a head-on collision that occurred on the Cross County Parkway, Mount Vernon, New York, on May 31, 1958.
*574 The scene of the accident was in the area of the Wartbnrg intersection or cutoff on said Parkway at which point the road, consisting of 4 10-foot lanes, curves to the right for westbound traffic, the curve being approximately 650 feet long with a radius of 600 feet, an approximate 9-degree curve. One Llewelyn Byrd, killed in the crash and for whose death no action is brought, was traveling westerly in the eastbound lane and crashed into the front of a station wagon traveling easterly in its proper lane. The driver and all four passengers of the station wagon were instantly killed. The actions are brought for all of the occupants of the station wagon, as well as two passengers in the Byrd car, one of whom was killed and the other of whom was injured.
The defendants are the 'County of Westchester, the Westchester County Park Commission and the Westchester County Parkway Authority, charged with the maintenance and operation of the Parkway either at the time of the accident or at sometime prior thereto.
The plaintiffs seek to hold the defendants liable for their alleged negligence in the design of the road, the curvature at the point of the accident, the lack of Signs warning of the curve, inadequate banking at the curve, and the absence of nontraversable median barriers. They too claim, as they must, that this negligence was the proximate cause of the accident.
The accident occurred at approximately 5:30 a.m., on a clear, dry day. Byrd traveling in the westbound driving lane pulled over the westbound passing lane and the center of the highway into the eastbound passing lane as he passed a car traveling westerly in front of him. This car was in the driving lane and was traveling at 60 to 65 miles per hour when passed by Byrd. The driver of this car estimated Byrd’s speed at 90 to 95 miles per hour as he passed him. A passenger in the Byrd car who miraculously survived the crash estimated Byrd’s speed at this point to be 100 miles per hour and testified that Byrd in passing the ear continued to veer to his left and travelled in the eastbound passing lane at this speed for some 200 or 300 feet. This all occurred before Byrd reached the curve. On reaching the curve Byrd went further to his left entering upon the eastbound driving lane, still at this extreme speed. Just prior to the collision Byrd changed his course to the eastbound passing lane, the lane in which the station wagon was approaching, in which lane the collision occurred. A laboratory test made soon after Byrd’s death showed 0.26 alcohol by weight content in his blood, from which a finding of intoxication can be made. At the scene of the crash the two eastbound lanes were separated from the *575 two westbound lanes by a double white line. There was no median divider at this point.
The area of the Parkway involved in this accident was constructed in 1932. In 1949 or 1950 a bridge was placed underneath the curve to accommodate an access road leading from the Hutchinson Eiver Parkway. The surface of the Cross County Parkway was restored to its original condition after the bridge was completed, there being no change in alignment, grade, banking or curvature.
So far as the original design of the Parkway is concerned, plaintiffs at the trial did not press the inadequacy thereof. It is their claim, however, that the defendants were negligent in failing to modify the original design and eliminate conditions of danger of which plaintiffs claim defendants had notice by reason of several accidents at the scene of this fatal crash. Plaintiffs contend that defendants should have erected nontraversable median barriers on the curve. They also claim that defendants were cognizant of hazardous conditions on the Parkway by reason of reports submitted to them by highway and traffic consultants and that no action was taken thereon. In an attempt to get beyond the purview of Weiss v. Fote (7 N Y 2d 579) plaintiffs contend that the corrective action that defendants should have undertaken would fall in the category of highway maintenance.
In the Weiss case (supra) a distinction is made between the judgment of an expert planning body for which liability can only be predicated on proof that the plan adopted or action taken was without adequate study or reasonable basis and the liability attaching to everyday operations of government. At pages 585 to 586, Fuld, J., states for the majority: “ Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government — for instance, the garden variety injury resulting from the negligent maintenance of a highway — but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. * * * To accept a jury’s verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts.”
*576 The fact that defendants ordered surveys and reports on the Parkway showed that they sought and considered expert advice from the consultants. One of these studies made several recommendations which fell into two categories, one recommending redesigning or alignment changes in specific locations and the other calling for a general redesign of the whole Parkway to provide for more and wider lanes and median divisions. There was in the report no finding of any hazardous condition specifically related to the scene of this accident (as there were to some other specific locations). The recommendations made generally for the redesign of the highway, that is to widen and provide more lanes and median divisions, are not matters of maintenance as claimed by the plaintiffs but rather are ‘1 lawfully authorized planning by governmental bodies ” or a “ plan of governmental services ” as described in the Weiss case.
The record shows that after these reports were received, the defendants considered the recommendations and that as to the installation of median barriers, the expert opinion then prevalent was divided between proponents and opponents of barriers. In 1958 experiments and studies produced divergent opinions as to the merits of nontraversable median barriers. It was claimed they impeded the flow of traffic, deflected vehicles into other vehicles, and when so constructed to prevent vehicles from crossing over the median caused or produced accidents that otherwise would not occur. Further testing and experimentation long subsequent to 1958 have shown the efficacy and desirability of barriers under certain circumstances.
We must, however, determine the propriety of defendants’ decision not to erect barriers in the light of the opinions of the experts and the results of the experiments and studies then available. Even were we to assume that the erection of barriers was to be judged by the standard of reasonable care in the maintenance of a highway, and not as a decision arrived at by a governmental body after adequate study and founded upon a reasonable basis as distinguished in the Weiss case (supra), the failure to erect barriers would not constitute negligence. “ Error of judgment alone does not carry liability with it, for error of judgment alone is consistent with reasonable care ” (Cardozo, J., Stern v. International Ry. Co., 220 N. Y. 284, 294).
It was stipulated that the speed limit for the entire Cross County Parkway was 35 miles per hour and that at no place were there any signs or directions reducing the speed below 35 miles per hour. This speed limit was posted along the Parkway. There was no sign relating to this curve.
*577 Competent evidence showed that this curve could be negotiated safely at speeds in excess of 35 miles per hour. Competent evidence further established that at this curve sight distances and banking were adequate and the grade and curve were within reasonable limits so as to permit one to negotiate this curve safely at this speed or one somewhat in excess of it.
There is no basis for charging the defendants with negligence. The extreme speed of the Byrd car and his leaving his proper lane even before arriving at the curve, Avhich may be explained by his intoxicated condition, all of which shows a complete and utter disregard for the consequences of his acts, precludes the absence of a barrier, the alignment of the highway or the absence of a sign warning of the curve as being proximate or contributing causes to the happening of the accident.
The defendants are not insurers of the safety of persons traveling on its highways. They had the duty to construct and maintain the highway in a reasonably safe condition but this does not preclude risks to travelers on the highways. “ A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel on it safely” (Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696, affd. 306 N. Y. 801).
The accident Avas due solely to the manner in AA’hich the Byrd car was operated. But for the negligence of Byrd, this accident Avould not have happened (cf. Warda v. State of New York, 45 Misc 2d 385).
The plaintiffs having failed to establish negligence on the part of the defendants, and none of the physical features of the highway at the point of the accident, even if found to constitute negligence on the part of the defendants, having in any way caused or contributed to the happening of the accident, the complaints are dismissed.