Dorothea E. Donaldson, J.
Claimant contended that he was entitled to recover damages for personal injuries and special damages upon the alleged negligence of the defendants, the State of New York and Palisades Interstate Park Commission, to properly inspect and maintain a designated swimming area with a float for diving in Lake Tiorati in Harriman State Park, a part of the Palisades Interstate Park. This contention was predicated upon res ipsa loquitur and claimant’s freedom from contributory negligence. The defendants maintained that their duty to protect the interests of citizens required the exercise of reasonable care, that the proximate cause of the injury was predicated upon conjecture and that there was insufficient proof of negligence or failure by the defendants.
The burden of proof must be sustained by the claimant. The defendants are not required to identify the cause of injury but neither may they rely upon the presumption that the premises are free from hazard when no accident had been reported prior to the date of this occurrence.
The claim was timely filed and has not been assigned or submitted to any other court or tribunal for determination.
On July 24, 1965 at 11:00 a.m., claimant, accompanied by a nephew and brother-in-law, having paid the admission fees to the swimming beach, entered Lake Tiorati and swam out to the raft. The raft floated at the apex of the swimming area identified by green flags located at either ends of a sandy beach, to which flags lifelines were attached extending out to the raft. The wooden-planked raft was two separate floats, each 14 feet by 24 feet, buoyed by steel drums and was moored in place by five ropes which extended from its center and each of the four corners to individual concrete and rock anchor blocks 16 inches by 10 inches by 10 inches in size on the lake bottom. During the months of March or April, in preparation for the Summer bathing season, the raft was positioned, the lines were attached and the concrete weights became the anchors and settled into the bottom sand and silt of the lake. Originally, Lake Tiorati was a natural lake but had been artificially enlarged. The swimming area with the diving raft was situated in the artificial area of the lake.
When the raft was originally positioned in March or April *145 and daily during the months of the Summer swimming season, the area of the sandy beach and the lake bottom of the swimming area from the beach to the raft as confined by the guide ropes was examined to remove any debris, foreign objects or hazards. When the paying public entered the swimming area, lifeguards were so positioned that one was always on the raft, one was seated in a stand on the beach and two others were within the water area between the beach and the raft either on surf boards or in boats.
Aurelio Mendez testified that on the day and time in question, he dove from the beach side of the raft and touched the lake bottom with his fingers. He stated that during this maneuver his nose struck some object and that on surfacing, his brother-in-law and nephew noted that his nose was bleeding. He was helped onto the raft and the lifeguard was notified. The claimant was taken to first aid and then to Tuxedo Hospital where medical attention was given him. He sustained a laceration on the bridge of the nose which required suturing. X rays revealed a fracture of the nasal bone.
The defendants ’ experts testified that the raft was positioned where the depth of the water was 9 to 10 feet and that this depth was maintained during the Summer months even when evaporation changed the water depth. The State swimming expert testified that this depth was safe and adequate, was in accordance with all safe swimming standards and that the injuries sustained by the claimant were the result of improper diving and an inability to exercise the precautions required of a good swimmer to protect himself from usual and expected hazards. Claimant maintained that the water was dirty, that it appeared turgid so that he was unable to see any distance in front of him, and that he exercised all the control required of a good swimmer.
No lifeguard who was in attendance at the Lake Tiorati swimming area on July 24, 1965 was produced to testify.
As a consequence of the injuries, Aurelio Mendez remained away from his work as a porter for one week, for which no wages were lost since the time was accredited to sick leave. The claimant went to Metropolitan Hospital in New York City where the sutures in the nose were removed. His special damages totaled the sum of $75, representing the bill of the Tuxedo Hospital and for medical services rendered by Dr. Gasparini, neither of which has been paid, and the amount of $3 for a prescription for pills. While away from work for the week claimant stated that he had complaints of pain in the head and in the nose, rested in bed and took prescribed medication.
*146 Insufficient proof has been submitted to show that the claimant sustained a change in contour of the nose or a facial disfigurement as a result of this accident or that complaints of headache are causally related to the accident.
The defendants had a responsibility to exercise reasonable care and to provide the public with a safe area in which to swim or to dive. The public, as invitees, are entitled to assume that the premises are free from any hazards which a reasonable inspection would uncover. The use of concrete weights as anchors to moor the raft where it is unknown whether the anchors were completely embedded in the lake bottom is sufficient evidence of and reasonably foreseeable as an existing danger or hazard as to constitute negligence. (Harrington v. State of New York, 33 Misc 2d 598; Violante v. State of New York [Claim No. 35943, Ct. of Claims].) The situs of the laceration on claimant’s nose was not within the area testified to by defendants’ swimming expert that it could have been occasioned by an improper dive. Since there was no warning, either oral or posted, of raft anchors or that diving toward the corners of the raft was hazardous or forbidden, the claimant’s movements while diving do not constitute contributory negligence.
The contentions of the defendants are not supported by the evidence. The claimant is free from contributory negligence and has sustained the burden of proof.
Motions to dismiss made by the defendants at the close of claimant’s proof and at the close of the entire trial, upon which decision was reserved, are now denied.
Accordingly, the claimant is entitled to an award in the amount of $1,325, of which $75 is attributable to special damages.