OPINION OF THE COURT
Gerard M. Weisberg, J.
On August 4, 1976, at approximately 12 noon, Glen Herman (claimant) and his friend Lawrence Weinmann entered the surf at Jones Beach West End 2 (WE2). They paused momentarily at the water’s edge to wet their ankles; then Glen Herman ran into the water, a distance of 50 to 100 feet, to a point where the gradually deepening water had reached waist level — approximately four feet. Lurching forward, straight out towards the sea, in a head first “surface-dive”, Herman struck a submerged sand bar with his arms and head. Still conscious, he felt the sand with his face as he lay prone in the water — paralyzed and unable to turn over. Weinmann had entered the water with Herman and was standing in waist deep water, approximately six feet to Herman’s left. Observing Herman floating face down for 10 seconds, Weinmann at first thought *456 his friend was joking, but then, seeing Herman turn blue, he picked claimant’s head out of the water and called the lifeguard. While rendering this assistance, Weinmann observed an abrupt change in the water’s depth to approximately knee level, and felt the ocean bottom incline upwards. Weinmann testified that an accumulation of sand existed which was invisible from above the ocean’s surface.
This claim for negligence is predicated upon two contentions: (1) that the State failed to perform its duty to provide adequate warning of the danger posed by sand bars concerning which it had knowledge based on prior accidents; and (2) that the State should have erected “groins” to diminish sand bar activity. The trial was bifurcated.
Maxwell Cohen, an oceanographer, marine biologist and educator, gave expert testimony concerning the topography and oceanographic characteristics of Jones Beach from which the court finds that great waves roll in from the southeast, striking the south shore of Long Island at an angle and creating a longshore current from east to west which carries sand and other particulate material along with it like a conveyor belt, simultaneously withdrawing and depositing sand on various beaches, whose topography is continually changing and which were described as “ephemeral”; that about 1939 a jetty of massive boulders and sand was constructed by the Army Corps of Engineers at Jones Inlet for the purpose of trapping sand which might otherwise flow into the inlet, blocking the channel; that WE2 is that area of Jones Beach closest to the jetty, lying approximately one mile therefrom; that WE2 was merely a few dunes and marshes when the jetty was built, but is now extremely large owing to an accretion of sand held by the jetty; that land under water in this area has greater “bar action” than any other at Jones Beach; that sand bars form from 50 to 100 feet offshore in the northeast United States where obstructions slow down the current; that bars are extremely variable and transitory; that the high incidence of sand bars at WE2 is known to the scientific community; that groins are similar to jetties and that they jut out perpendicularly to the shore line and are constructed by the Army Corps of Engineers to slow the longshore current and cause accretions of sand and minor sand barring; that *457 there are 50 or more groins on Atlantic and Long Beaches; that it was physically possible to construct groins upstream of WE2 which, if constructed, would have lessened the number of sand bars and made the ones that formed less abrupt; and that groins are aesthetically detrimental.
Evidence was received of three previous accidents concerning which the State had actual knowledge. On June 14, 1974 Timothy Palmieri suffered injury at WE2 when his head struck a submerged sand bar while executing a surface dive approximately 50 feet from shore. The water’s depth had abruptly dropped from approximately his bathing suit level to below the shins. Palmieri suffered a dislocated shoulder and was removed to the hospital by a police ambulance. Additionally, on May 21, 1975 Jack E. Crespi executed a surface dive at WE2, struck a sand bar and became paralyzed. Crespi filed a claim against the State which was discontinued. The third reported accident took place on May 24,1952 when Robert Edward La Rocco suffered crippling injuries and paralysis after striking a sand bar while executing a surface dive at WE2. This accident gave rise to a claim against the State of New York (La Rocco v State of New York, 7 Misc 2d 161, affd 8 AD2d 644).
During the seasons of 1974 through 1976 approximately one and one-half million patrons attended WE2 which is approximately one-half mile in length. While admitting that recurring types of accidents generally warrant an investigation, the State admitted that no investigation was undertaken of the Herman accident. In maintaining Jones Beach, the State does not undertake to level or otherwise control the condition of the ocean floor, except that'lifeguards are required to search for submerged objects. Sand bars are built up and broken down, sometimes hourly. In recognition of this fact, the Water Safety Lifeguard Manual of the New York State Parks and Recreation Department states (p 35) thereof: “[Lifeguards must be on the alert for changing bottom conditions. These variations are particularly dangerous to poor and non-swimmers.” The manual further states (p 38): “[a]t one place there may be a smooth level floor, but ten yards to either side there may be a deep hole with a sea puss running through it.” The “sea *458 puss” is a swift runoff of water caused by the action of waves over a sand bar or “berm”. Lifeguards are instructed to be “constantly on the alert” for sea pusses which can be identified by observing “surf indicators”.
Douglas Molander, Assistant Supervisor of Park Operations at Jones Beach, whose duties comprise management and maintenance thereof, testified that lifeguards were required to warn bathers of any dangerous conditions of which they had knowledge. During the summer of 1976 there were no warning signs posted concerning any sand bars or other submerged portions of the beach area. There are, however, signs stating “Bathe in Protected Areas Only”, which areas are designated by markers.
The State is not an insurer of its patrons’ safety against all hazards, natural or otherwise; the State as landowner is charged with acting reasonably to maintain its property in a safe condition “in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.” (Smith v Arbaugh’s Rest., 469 F2d 97, 100.) The distinctions formerly drawn between invitees, licensees and trespassers are not material, since a single standard of care applies, determined by the likelihood of claimant’s presence at the particular time and place of the injury and the foreseeability of harm. The scope of this duty is qualified by the notion that the landowner is not required to undertake “unduly burdensome” tasks or responsibilities. (Scurti v City of New York, 40 NY2d 433, 442.) Specifically, the State has the duty to exercise reasonable care in the maintenance, control and supervision of bathing areas such as Jones Beach. (Clark v City of Buffalo, 288 NY 62; Curcio v City of New York, 275 NY 20; Casoni v Town of Islip, 278 App Div 715; Caporossi v Atlantic City, 220 F Supp 508, affd 328 F2d 620, cert den 379 US 825; Kleinke v Ocean City, 163 NJ Super 424.)
The State principally relies upon LaRocco v State of New York (supra), in which a bather was seriously injured at WE2 when he struck a submerged sand bar while executing a surface dive. The Appellate Division, Third Department, affirmed a judgment of no liability upon the grounds that: (1) it was unreasonable and unduly burdensome to *459 expect the State to inspect or remove sand bars at Jones Beach which is approximately 20 miles long and that imposition of such a task would improperly render the State an insurer of beach safety; (2) that the accident situs was not officially open to the public and, consequently, the State had a limited duty with respect thereto; and (3) that claimant was contributorily negligent in failing to ascertain that the water was safe for diving.
La Rocco stands for the legal proposition that the State has no affirmative duty to change the configuration of the ocean floor so as to eliminate transitory phenomena, such as sand bars, created by the interplay of natural forces. This explicit holding destroys claimant’s contention that groins should have been constructed to accomplish this very purpose. The factual record is, in any event, wholly insubstantial with respect to groins, their feasibility, cost or ramifications, especially in light of their deleterious aesthetic effect on the landscape, and the necessary involvement of the Army Corps of Engineers, an entity not under the control of the State. The decision-making power with respect to such projects properly reposes in the executive and legislative branches of government whose discretionary acts are clothed with qualified immunity. (Weiss v Fote, 7 NY2d 579; Natina v Westchester County Park Comm., 49 Misc 2d 573.)
The Appellate Division, however, carefully limited La Rocco to its facts quoting the following from Sadowski v Long Is. R. R. Co. (292 NY 448, 455): “[essentially, what is negligence in a given case is a question of fact. Each case depends upon its own peculiar circumstances. Decisions in other actions in which damages are sought for personal injuries furnish no criterion or guide for determination of what is or is not negligence in a particular case involving its own peculiar facts and circumstance.”
Significant differences exist between the present case and La Rocco which limit its binding authority to the legal points there enumerated. On the over-all question of liability, La Rocco is distinguishable from the present case on three grounds: (1) the La Rocco accident occurred in a closed portion of the beach — a critical fact since the court held that a limited duty was applicable; by contrast the *460 Herman accident took place in a designated bathing area supervised by lifeguards; (2) the court found contributory negligence in La Rocco, this being fatal to the claim under prior law, whereas the Herman claim is governed by CPLR article 14-A (comparative negligence); and (3) the main thrust of claimant’s attack in the Herman case is the State’s failure to provide adequate warning; this issue was not litigated at all in La Rocco, and is predicated upon events including and subsequent to the La Rocco claim.
The State has a duty to warn patrons of its parks and beaches of dangerous natural conditions not known or obvious to an ordinarily intelligent person concerning which the State has actual or constructive knowledge. This duty is particularly significant where the natural condition itself is not readily susceptible to alteration or control. (Collentine v City of New York, 279 NY 119; Kittle v State of New York, 245 App Div 401, affd 272 NY 420; Burkart v State of New York, 28 AD2d 1167; Mendez v State of New York, 56 Misc 2d 143 [precipitous dropoff or cliff]; Terry v State of New York, 79 AD2d 1069; Dakin v State of New York, 284 App Div 53; Trimble v City of New York, 263 App Div 233 [falling rock]; Casoni v Town of Islip, 278 App Div 715, supra; Dinnihan v Lake Ontario Beach Improvement Co., 8 App Div 509 [sudden deep water]; Buchanan v Newport Beach, 50 Cal App 3d 221 [wave action over sand bar]; Tarshis v Lahaina Inv. Corp., 480 F2d 1019 [dangerous waves].)
Liability may ensue where the beach operator fails to provide adequate warning, or affirmatively misleads patrons concerning water too shallow for diving or submerged obstructions, including sand bars. (Lawson v State of New York, 207 Misc 542, affd 1 AD2d 796; Harrington v State of New York, 33 Misc 2d 598; Surmanek v State of New York, 24 Misc 2d 102; Goss v State of New York; 46 NYS2d 379; Skelly v Pleasure Beach Park Corp., 115 Conn 92; see Anns., 85 ALR3d 750, 86 ALR3d 1021.)
The absence of actual or constructive notice is fatal to such a claim. (See Oppel v City of Long Beach, 262 App Div 777; Stanton v State of New York, 5 Misc 2d 287.) However, the existence of previous similar accidents is highly probative of actual notice of the dangerous condition. While the *461 threat posed by a particular hazard may appear unique or freakish when an accident first occurs, the foreseeability of harm becomes readily apparent after a series of virtually identical occurrences, and serves to impose Upon the beach operator a duty to take reasonable precautions to avert further tragedy. (See Caporossi v Atlantic City, 220 F Supp 508, affd 328 F2d 620, cert den 379 US 829, supra; Warner v City of Bay St. Louis, 408 F Supp 375, affd 552 F2d 583, reh den 559 F2d 30; First Arlington Inv. Corp. v McGuire, 311 So 2d 146, [Fla], cert den 330 So 2d 16 [Fla]; Dendy v City of Pascagoula, 193 So 2d 559 [Miss]; Dakin v State of New York, 284 App Div 53, supra; Trimble v State of New York, 263 App Div 233, supra; cf. Stanton v State of New York, supra.) If an identifiable object is the instrumentality of harm, the defendant must have been given notice of that object. However, where recurrent, though transitory, natural phenomena are concerned, such as falling rocks, huge waves, or sand bars, it is sufficient that the defendant has notice of the tendency of such conditions to arise and the foreseeable likelihood of harm therefrom.
The previous accidents concerning which claimant has adduced evidence, clearly establish that sand bars constituted a hazardous condition at WE 2; that accidents caused thereby were serious in nature; and that the State had actual knowledge of these facts. While the relative incidence of such accidents was not high, compared to the total number of persons visiting Jones Beach during the relevant time frame, the burden of providing adequate warning was similarly insignificant when compared with the tragic consequences which have befallen claimant and his fellow accident victims. No warning signs whatsoever were provided by the State, except to designate “protected areas” by means of markers. The State’s duty of care extended to foreseeable and common methods of entering the water, such as by surface dives. (See Harrington v State of New York, 33 Misc 2d 598, supra; Surmanek v State of New York, 24 Misc 2d 102, supra; Goss v State of New York, 46 NYS2d 379, supra.) The neglect in performing this fundamental duty to warn constituted negligence which was a proximate cause of claimant’s accident. Accordingly, the State is held liable.
*462 As previously indicated, claimant’s cause of action is subject to the law of comparative negligence. (CPLR art 14-a, eff Sept. 1, 1975.) In La Rocco (8 AD2d 644, 645, supra), the Appellate Division found claimant contributorily negligent in failing to ascertain that the water “was of such depth as to permit his actions in safety”. This observation is highly persuasive, though of different legal effect here. Claimant had been at Jones Beach six times during 1976 and also in prior years. He is charged with possessing that degree of knowledge of conditions at Jones Beach which a reasonable person would have acquired during his prior experiences, While the State has a duty to act reasonably with regard to its patrons, all persons have a duty to exercise reasonable care for their self-protection. This responsibility on the part of the individual is not mitigated by the fact that surface diving is a customary way of entering the water, since it must still be attended to with that degree of care which the circumstances demand. Accordingly, we hold that claimant was guilty of culpable conduct which contributed 50% to the happening of the accident. (See Terry v State of New York, 79 AD2d 1069, supra; Warner v City of Bay St. Louis, 408 F Supp 375, affd 552 F2d 583, reh den 559 F2d 30, supra.)
The clerk of this court is directed to enter an interlocutory judgment in favor of claimant Glen Herman and against the defendant the State of New York on the issue of liability. A trial of the issue of damages shall be heard at a time and place of which counsel shall be notified and, upon rendition of the decision with respect thereto, appropriate judgment shall be entered.