STANLEY KACZMARCZYK, DOLORES KACZMARCZYK, and STEPHEN K. YAMASHIRO, Temporary Administrator of the Estate of Tom Kaczmarczyk, deceased, Plaintiffs-Appellants, *v.* CITY AND COUNTY OF HONOLULU, STATE OF HAWAII, JOHN DOES 1 THROUGH 10, DOE CORPORATIONS 1 THROUGH 10 AND DOE GOVERNMENTAL AGENCIES 1 THROUGH 9, Defendants-Appellees

NO. 7191

(CIVIL NO. 50131)

DECEMBER 28, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED TEMPORARILY

*Per Curiam.* This is an appeal from summary judgments in a wrongful death action entered by the trial court in favor of the defendants. Plaintiffs-appellants are the parents and the temporary administrator of the estate of Tom Kaczmarczyk, deceased (hereinafter "plaintiffs"). Defendants-appellees are the City and County of Honolulu (hereinafter "City") and the State of Hawaii (hereinafter "State").

On December 4, 1974, Tom Kaczmarczyk arrived in Hawaii from the mainland for a vacation. Three days later, on December 7, he and a friend, Lee McCarthy, started on a bus trip around the island. At or near Ehukai Beach Park they got off the bus, walked across a strip of land between the highway and the beach, and went swimming. They became caught in a current which swept them along the beach and then out to sea. McCarthy managed to make it back to shore. But Kaczmarczyk disappeared in sizeable surf despite the rescue efforts of a lifeguard employed at the beach by the City.

On December 7, 1976, the plaintiffs filed an action against the

City and against assorted Doe defendants.[1] On March 21, 1978, the plaintiffs filed a second amended complaint identifying the State as the defendant referred to in their original and first amended complaints as "Doe Governmental Agency 10." The State and the City thereafter each answered and cross-claimed against the other.

On June 6, 1978, the State moved for summary judgment on two grounds. First, the State argued that the plaintiffs' claims against it were barred by the two-year statute of limitations on tort claims against the State.[2] Second, the State argued that if there was any duty owed the deceased, it was owed by the City as operator, manager and controller of Ehukai Beach Park and the waters adjacent thereto, and not by the State as owner. The motion was granted.

On August 14, 1978, the City moved for summary judgment on four grounds: (1) that since Kaczmarczyk drowned in the ocean, the State if anyone was liable as owner; (2) that no duty to warn of dangerous conditions was owed the deceased because such danger was known and/or obvious; (3) that recovery was precluded because the deceased assumed the risk and/or was contributorily negligent; and (4) that "the City owed only a general duty to users of Ehukai Beach Park and not a specific duty to individuals using adjacent beaches." The motion was granted.

The plaintiffs appeal.

I.

We consider first the plaintiffs' appeal from the grant of summary judgment in favor of the City.

---

[1] Rule 17(d) of the Hawaii Rules of Civil Procedure provides:

When it shall be necessary or proper to make a person a party defendant and it shall appear by affidavit of the attorney that the affiant has been unable to ascertain the name of the defendant or a part of his name or to ascertain his identity, the court may on motion with or without notice order the action to proceed against him, adding a description of his interest in the action and stating so much of his name as is known. The person intended shall thereupon be considered a defendant to the action and as sufficiently described for all purposes, including service of process.

[2] HRS § 662-4 provides:

A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of medical tort claim when the limitation of action provisions set forth in section 657-7.3 shall apply.

We begin with the well established principle that a municipality is not an insurer of the safety of those who make use of its park, playground, and recreational facilities. It is equally settled, however, that a municipality must exercise reasonable care in the maintenance of these facilities and in the supervision of their use by the public. For an occupier of land is under a duty to exercise all reasonable care for the safety of all persons known to be, or reasonably anticipated to be, upon its premises. *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969). Where the premises front upon the ocean, this responsibility extends to those swimming in the waters along the property's beach frontage. *Tarshis v. Lahaina Investment Corp.,* 480 F.2d 1019 (9th Cir. 1973).

In line with the foregoing principles of municipal tort liability, the plaintiffs have alleged negligence on the part of the City, (1) in failing to give adequate warning to the deceased of dangerous surf conditions; (2) in failing to adequately equip and train the lifeguards stationed at the park; and (3) in failing to provide adequate staffing for the lifeguard station at the park.

Undoubtedly, the City would have had a duty to warn users of Ehukai Beach Park of extremely dangerous conditions in the ocean along its beach frontage which were not known or obvious to persons of ordinary intelligence, and which were known or in the exercise of reasonable care ought to have been known to the City. *Tarshis v. Lahaina Investment Corp., supra; Friedrich v. Department of Transportation,* 60 Haw. 32, 586 P.2d 1037 (1978). *See Gonzales v. City of San Diego,* 130 Cal. App.3d 882, 182 Cal. Rptr. 73 (1982); *Herman v. State,* 109 Misc.2d 455, 439 N.Y.S.2d 1018 (1981).

In *Tarshis,* the plaintiff was a guest of defendant Royal Lahaina Hotel at Kaanapali, Maui. The hotel had a beach frontage of 400 feet but owned only that part of the beach above the upper reaches of the wash of the waves, *see In re Application of Ashford,* 50 Haw. 314, 440 P.2d 76 (1968). In its brochures, the hotel advertised:

[T]he Royal Lahaina Beach resort stretches along a 3-mile secluded white sand beach on the West side of the Island of Maui. . . . The sea is safe and exhilarating for swimming. . . . [480 F.2d at 1020]

In support of its motion for summary judgment, however, the defendant alleged that on the day of the plaintiff's accident, it had

posted four signs along the frontage of the beach, two of which read:
> CAUTION Red flag on beach indicates dangerous surf conditions. Guests please use swimming pools. Mahalo. [480 F.2d at 1020]

The other two signs read:
> NOTICE to our guests, Red Flag on Beach indicates dangerous surf. Please use swimming pools. Mahalo. [480 F.2d at 1020]

The red flags (allegedly six in number) were positioned along the edge of the hotel's beach frontage, and were admittedly seen by the plaintiff when she and her companions went to the beach for a swim. In her affidavit, however, the plaintiff stated that she did not see the signs warning of dangerous surf conditions, nor did she receive verbal warnings from the defendant concerning these conditions. Noting the existence of "slight waves," the plaintiff and her companions entered the water where, five to ten minutes later, the plaintiff was injured as the result of being thrown on the beach by a "huge wave."

The trial court in *Tarshis* granted the defendant hotel's motion for summary judgment, holding that the dangers inherent in swimming in the ocean on the day of the accident should have been known to the plaintiff as an ordinarily intelligent person and hence the hotel was under no duty to warn her of the dangerous surf conditions. The federal appellate court, however, reversed and pointed out that the question of whether the ocean fronting the defendant's property would have appeared dangerous to an ordinarily intelligent person was one of fact inappropriate for summary adjudication. It held:

> On the basis of this evidence, appellant is entitled to present to a trier of fact her theory that the existence of the powerful, surging surf represented an unapparent, dangerous condition which appellee knew about and of which it failed to adequately warn her. [480 F.2d at 1021.]

The plaintiffs in the present case were likewise entitled to present to the trier of fact the question of whether the City was negligent in failing to warn their decedent of extremely dangerous conditions which were not readily apparent to persons of ordinary intelligence. There does exist a genuine dispute as to whether, in getting to the beach, the deceased and his companion entered through Ehukai Beach Park which was incontestably under the control and man-

agement of the City, or whether their route took them over property not owned or controlled by it. But this would be determinative only on the question of the City's duty to warn. If from any direction, the deceased and his companion entered the park premises, including its beach frontage, then they were visitors to the park in every sense of the word. In any event, this would also be a factual issue for the jury to decide.

The plaintiffs also allege error on the part of the trial court in summarily adjudicating against them their claim that the City was negligent in failing to adequately equip and train the lifeguards stationed at the park.

"Proprietors [which includes a municipality] of a bathing resort, in discharging the duty of ordinary care for the safety of patrons, may be obliged to keep someone on duty to supervise patrons and rescue any apparently in danger." *Carreira v. Territory,* 40 Haw. 513, 521 (1954). But even where a municipality is under no duty to provide lifeguard services, yet if it voluntarily assumes this protective responsibility it has a duty to perform those services with reasonable care. *Gonzales v. City of San Diego, supra.* Reasonable care in this context necessarily contemplates that the lifeguards assigned are competent and qualified to perform these services. In this connection, it has been said that in addition to his skills as a swimmer, "it may reasonably be assumed that a qualified lifeguard is one who has at least ordinary powers of observation, who is vigilant and attentive to duty, and who realizes that.. . . he should be watchful for any sign of distress or danger and quick to render assistance." *Lindsey v. De Vaux,* 50 Cal. App.2d 445, 453, 123 P.2d 144, 149 (1942). And in the "Lifeguard Manual" which it prepared in June, 1965, for the instruction and guidance of the City's lifeguards, the City's Department of Parks and Recreation outlined the first attributes of a good lifeguard to be "physical fitness, constant vigilance, sound judgment that dictates for immediate action, and adherence to the rules and regulations."

In *Honeycutt v. City of Monroe,* 253 So.2d 597, 600 (La.Ct.App. 1971), the Louisiana court quoting from *Williams v. City of Baton Rouge,* 252 La. 770, 214 So.2d 138 (1968), stated:

"We recognize the duty of care a lifeguard owes to patrons at a public swimming pool to be more than the standard of care required of ordinary persons. A lifeguard, by training and expe-

rience, is expected to be prepared at a moment's notice to rush to the rescue of those in danger of drowning. His is not an obligation which can be discharged by inattention to the activity in the pool and a lack of awareness of the serious nature of the responsibility imposed upon the position."

We think this is just another way of stating the rule that a lifeguard, or an employee held out to the public as such, is required in the performance of his duties to exercise that degree of care which an ordinarily prudent lifeguard, possessing the requisite training and skills, would exercise under the same or similar circumstances. Stating the question in the present factual context, did the City lifeguards discharge their duties with the same degree of care as an ordinarily prudent lifeguard would have discharged them under similar circumstances? When their performance as shown by the record is judged by this standard, there can be no finding of negligence on the part of the City lifeguards stationed at the park on the day of the accident. Neither, therefore, can there be a finding of vicarious liability on the part of the city.[3]

Members of the public who patronized Ehukai Beach Park had the right to assume that the lifeguards on duty at the beach were qualified for the duties to which they were assigned. They had the right to rely upon the competence and vigilance of these City employees. And the record clearly shows that the two men on duty were qualified and competent lifeguards. They had been properly trained and instructed. They were alert and vigilant. They were where they were supposed to be — in a position to observe the swimming and bathing activity in the waters. In short, they were there when they were needed. And as the record also further indicates, the heroic and valiant, albeit ultimately unsuccessful, efforts of lifeguard Sean Ross to effect the rescue of the plaintiffs' decedent was nothing short of commendable. There is nothing in the record

---

[3] Any liability on the part of the City for its alleged failure to adequately train its lifeguards must ultimately be determined by the manner in which its lifeguards discharged their assigned duties and responsibilities. So that even if it were shown that the City had not adequately trained its lifeguards, yet if they performed their duties as lifeguards in essentially the same manner and with the same degree of care as an adequately trained and skilled lifeguard would have performed them under similar circumstances, the City's negligence would not be a proximate cause of the accident.

to indicate that they were not reasonably equipped. Accordingly, we hold that summary adjudication of the plaintiffs' claim of City negligence for its alleged failure to adequately equip and train its lifeguards was properly entered in favor of the City by the trial court. This claim will, therefore, not be a proper issue on remand.

Neither will the charge of negligence due to the alleged inadequate staffing of the lifeguard station at the park be an issue on remand.

In *Carreira v. Territory, supra,* the plaintiffs had charged the Territory with negligence in operating and maintaining at Waikiki Beach a swimming pool known as the War Memorial Natatorium by failing to provide sufficient lifeguards to protect the swimmers and users of the pool. At the close of the plaintiffs' case, the court granted the Territory's motion to dismiss. On the special facts of that case, this court affirmed the dismissal. It based its affirmance essentially on the absence of proof, direct or circumstantial, of proximate cause:

> Assuming that a jury might have found the Territory negligent in not providing an adequate degree of supervision in that it should have had more than one lifeguard on duty, if no one of the five hundred bathers or numerous boys playing on the raft saw Robert disappear there can be no assumption that any one of such additional lifeguards would have seen Robert when he disappeared. Consequently, such negligence would not have been the proximate cause of Robert's death. [40 Haw. at 518][4]

In the present case, there is a similar absence of proferred proof or reasonable inference from the record that the failure of the City to provide more lifeguards could have been a proximate cause of the death of the plaintiffs' decedent. And as we have already pointed

---

[4] The drowning in Carreira occurred in a completely unsupervised setting. The pool was located at Waikiki beach, and picnickers, bathers, and swimmers could come and go as they pleased. There was no way by which the manager, a matron, and the lifeguard who were in charge of the pool that day could have kept track of who was coming and going and who could have been missing. Under those conditions, and with so many people in the pool at that time, it would have placed an onerous and unjustifiable burden on the government to require it to provide the large number of lifeguards that would have been necessary to assure adequate supervision. Such a requirement would have been tantamount to making the Territory an insurer of the safety of every individual using the pool.

out, the lifeguards' conduct in this case was consistent with what can be expected of qualified lifeguards. The two men on duty were taking their jobs seriously. They were alert for any sign of distress or danger to swimmers. They were in a position to act promptly should the need arise. And they responded with dispatch when the need to take action did in fact arise.

On the questions, therefore, of whether the City was negligent in failing to properly equip and train its lifeguards and in failing to adequately staff its lifeguard station at the park, we find that the trial court did not err in granting summary judgment for the City on these issues. On the question of duty to warn, however, we hold that summary judgment in favor of the City was improvidently granted.

Accordingly, as to the City we reverse and remand for further proceedings consistent with this opinion.

## II.

We turn now to the question of whether the trial court erred in granting the State's motion for summary judgment, based on the statute of limitations.

In *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.,* 65 Haw. 592, 656 P.2d 84 (1982), this court held that the identification of Doe defendants joined in an action pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure must be made within a reasonable time after the expiration of the one-year period allowed by Rule 12(f) of the Rules of the Circuit Court[5] for the filing of the plaintiff's statement of readiness. It also said, however, that the time for identifying Doe defendants may be extended by the court by extending the time for

---

[5] Rule 12(f) provides that "[w]here no statement of readiness has been filed within one year after a complaint has been filed or within any extention granted by the court, the clerk shall notify in writing all parties affected thereby that the case will be dismissed for want of prosecution unless objections are filed within 10 days after receipt of such notice. If objections are not filed within said 10-day period or any extension granted by the court, the case shall stand dismissed with prejudice without the necessity of an order of dismissal being entered therein. Where objections are filed within said 10-day period or any extension granted by the court, the court shall . hear said objections upon notice and determine whether the case should be dismissed.

filing the statement of readiness, or even after the filing of the statement, by extending the time for identifying the Doe defendants. In *Wakuya,* the plaintiffs filed their statement of readiness on January 25, 1978. They presented the court with documents identifying their Doe defendants on February 10, 1978. This court held on those facts that the designation was seasonably made.

In the present case, the plaintiffs' original complaint was filed on December 7, 1976. The suit was brought against the City and County of Honolulu and against "John Does 1 through 10, Doe Corporations 1 through 10 and Doe Governmental Agencies 1 through 10." This joinder of Doe defendants was made pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure. The allegations against them were as follows:

Defendants John Does 1 through 10, Doe Corporations 1 through 10 and Doe Governmental Agencies 1 through 10 are persons or entities whose true names, identities, capacities, activities and responsibilities are presently unknown to plaintiffs or their attorneys, except that they were directly or indirectly responsible for the death of Tom Kaczmarczyk as herein described and are liable to plaintiffs for the injuries and damages suffered and sustained by plaintiffs as a consequence of the death of Tom Kaczmarczyk. Plaintiffs will hereafter ask leave of Court to amend this Complaint to show said defendants' true names and capacities after the same have been ascertained.

On January 6, 1977, the plaintiffs filed a First Amended Complaint containing the same Doe allegations. On February 8, 1977, the City filed its answer to the complaint. On December 7, 1977, the plaintiffs filed their statement of readiness as required by Rule 12 of the Rules of the Circuit Courts. On March 21, 1978, the plaintiffs filed their Second Amended Complaint which in effect constituted the required identification of a Doe defendant. Paragraph 4 of Count I of the second amended complaint:

Defendant State of Hawaii is a governmental entity which has consented to be sued pursuant to Chapter 662 of the Hawaii Revised Statutes, as amended, *and was previously identified herein as Doe Governmental Agency 10.* [Emphasis added]

We think in this case that the Doe designation was made too late. It was not made within a reasonable time after the filing of their statement of readiness. *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.,*

*supra.*[6] No request was made by the plaintiffs for an extension to file their statement of readiness. *See* Rule 12(f) of the Rules of the Circuit Courts. Neither was application made by them for an extension of time to identify their Doe defendants.

We reverse and remand as to the City. We affirm as to the State.

*Wayson W. S. Wong (Rice, Lee & Wong,* of counsel) for plaintiffs-appellants.

*Arthur Ripley, Jr.,* Deputy Corporation Counsel, for defendant-appellee, City & County of Honolulu.

*Craig Kugisaki,* Deputy Attorney General, for defendant-appellee State of Hawaii.

---

[6] In Wakuya the designation was made within sixteen days after the filing of the plaintiff's statement of readiness. Here, the plaintiffs waited three and one-half months before making their identification.